PEOPLE v LEWIS

Docket No. 84748. Submitted January 14, 1987, at Lansing. Decided
May 5, 1987. Leave to appeal applied for.

James M. Lewis was convicted of first-degree felony murder
following a jury trial in the Ingham Circuit Court, Jack W.
Warren, J. Defendant was sentenced to life in prison and he
appealed.

The Court of Appeals *held:*

1. At the time defendant gave the police statements incrimi-
nating himself and two others in a robbery and homicide, the
police lacked probable cause to arrest defendant on a murder
charge. Rather, defendant was taken into custody without a
warrant for investigatory purposes when the police officers who
had stopped the automobile defendant was driving noted that
the address on the automobile's registration form presented by
defendant matched that of a house where a body, later identi-
fied as that of the victim, was found but a cause of death was
yet to be established. Thus, defendant's detention was illegal
and error requiring reversal resulted from the trial court's
refusal to suppress evidence of defendant's statements.

2. The trial court erred in admitting electrophoretically
analyzed bloodstained evidence found at the scene of the mur-
der. General scientific acceptance of the reliability of serologi-
cal electrophoresis of evidentiary bloodstains among impartial
and disinterested experts in the scientific community has not
been established.

3. The credibility of a proposed expert witness was not

REFERENCES

Am Jur 2d, Arrest §§ 22-24, 32.

Am Jur 2d, Criminal Law § 414.

Am Jur 2d, Evidence §§ 370, 411 *et seq.*; 546, 613.

Am Jur 2d, Expert and Opinion Evidence §§ 1, 3, 18, 26 *et seq.*; 36,
103 *et seq.*

Am Jur 2d, Jury §§ 213 *et seq.*; 233 *et seq.*

Am Jur 2d, Witnesses §§ 641 *et seq.*

What constitutes probable cause for arrest—Supreme Court cases.
28 L Ed 2d 978.

Validity and construction of statute or court rule prescribing num-
ber of peremptory challenges in criminal cases according to
nature of offense or extent of punishment. 8 ALR4th 149.

improperly bolstered by the prosecution when the fact that the witness had been qualified as an expert in other cases was elicited. A trial court may properly consider an expert witness' other trial experience when determining whether the witness should be allowed to testify as an expert.

4. The trial court did not err in allowing a crime scene investigator to testify as to his expert opinion regarding marks on a stairwell wall at the scene of the murder. The investigator had extensive training in crime scene investigations and was very knowledgeable about different types of trace evidence.

5. Prosecution witness Victor Hamler's credibility was improperly bolstered when the prosecution offered, and the trial court admitted, evidence of a prior consistent statement by Hamler. The statement in question was made by Hamler before he was offered a plea bargain and at a time when he could have been charged with murder.

6. The trial court properly denied defendant's motion for a mistrial which was based on the prosecution's failure to provide defendant prior to trial with a copy of the report of results from a test done on a syringe seized from Victor Hamler. The report in question was provided by a police detective after trial had commenced and the prosecution had otherwise complied with defendant's request to supply all reports relative to defendant's case.

7. Defendant was not denied due process of law when he was ordered by the trial court, over defense counsel's objection, to proceed in front of the jury dressed in casual clothes.

8. The statute requiring a preliminary examination to be scheduled within twelve days of a defendant's arraignment does not require that the examination be concluded within twelve days. The statute regarding adjournments does not provide that only the accused may be granted an adjournment. In this case, good cause was shown for the various adjournments of defendant's preliminary examination which was commenced within twelve days of his arraignment.

9. The trial court erred in not strictly following MCR 2.511 during the jury selection process. The rule contemplates the seating and examination of a panel of potential jurors equal in size to the jury that will hear the case. As each juror is challenged, either peremptorily or for cause, another juror should be seated before further challenges are exercised.

Reversed and remanded for a new trial.

1. ARREST — PROBABLE CAUSE.

A police officer has probable cause to arrest where facts and

circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, to believe the suspect has committed or is committing a felony.

2. EVIDENCE — SUPPRESSION OF EVIDENCE — UNLAWFUL DETENTION OF SUBJECT — PROBABLE CAUSE.

Evidence obtained as a result of an individual's being taken into custody by the police for investigatory purposes or any statement made by the individual while so detained must be suppressed if there was no probable cause to arrest the individual.

3. CRIMINAL LAW — EVIDENCE — SCIENTIFIC EVIDENCE — SEROLOGICAL ELECTROPHORESIS.

Serological electrophoresis of evidentiary dried bloodstains has not achieved general scientific acceptance for reliability among impartial disinterested experts in the scientific community and is therefore inadmissible in a criminal prosecution.

4. WITNESSES — EXPERT WITNESSES — APPEAL.

The determination of whether a witness is an expert is within the discretion of the trial court and will not be reversed absent an abuse of discretion; the trial court may properly consider the witness' other trial experience in determining whether a witness should be allowed to testify as an expert.

5. EVIDENCE — EXPERT TESTIMONY — APPEAL.

Expert testimony is admissible provided it assists the trier of fact in understanding the evidence or the factual issues and the expert witness has sufficient qualifications to make it appear that his opinion or inference will probably aid the jury in its search for truth; a trial court's decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion.

6. EVIDENCE — WITNESSES — PRIOR CONSISTENT STATEMENTS.

Evidence of a prior consistent statement of a witness is generally inadmissible; however, such evidence is admissible to rebut a charge of recent fabrication where the prior consistent statement was made at a time prior to the existence of any fact which would motivate bias, interest, or corruption on the part of the witness.

7. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — ADJOURNMENT — TWELVE-DAY RULE.

There is no requirement that a preliminary examination originally scheduled within twelve days of arraignment and adjourned upon a showing of good cause by either party be rescheduled within twelve days (MCL 766.7; MSA 28.925).

8. JURY — JURY SELECTION — COURT RULES.

>It is error in the jury selection process to allow more than one peremptory challenge to be exercised at the same time; as each juror is challenged, either peremptorily or for cause, another juror should be seated before further challenges may be exercised (MCR 2.511).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, *Robert B. Ebersole,* Chief Appellate Attorney, and *Susan L. LeDuc,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Mardi Crawford*), for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and WAHLS and G. W. CROCKETT, III,* JJ.

G. W. CROCKETT, III, J. Defendant was convicted by an Ingham Circuit Court jury of first-degree felony murder, MCL 750.316; MSA 28.548. The murder victim, Lee Vond Sweezer, was the defendant's uncle. Defendant was sentenced to a mandatory life term in prison and appeals his conviction as of right. On appeal, defendant raises a total of ten issues which he claims require reversal of his conviction.

On October 31, 1983, the Lansing police found the body of Lee Vond Sweezer in the basement of his home at 714 Johnson in Lansing. Sweezer had been dead for several days and the evidence at the scene indicated that he may have died a violent death. At about the same time on October 31, 1983, two Lansing police officers were called to investigate a complaint by the proprietor of the Spartan Motel in Lansing that a bronze-colored

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Cadillac had been illegally parked on the motel's parking lot for several days. As the police approached the vehicle, defendant got in the car and began to drive away. The police stopped the vehicle and asked defendant for his driver's license and inquired why he was using the motel's parking lot. Defendant did not have a driver's license, but did produce the registration for the car. The car was registered to Lee Vond Sweezer of 714 Johnson in Lansing. Defendant told the officers that the name and address on the registration was his, as was the car. The officers testified that the 714 Johnson Street address "rang a bell" because they remembered a recent radio dispatch saying that crime scene investigators had been called to that location to investigate a serious crime involving a body, such as a suicide or homicide. The officers were then ordered by their superiors to bring the defendant in for questioning. Defendant was searched and a knife was removed from his sock and a pair of homemade "numchucks" were taken from the front seat of the car.

Once in custody, defendant was questioned extensively by the police about his knowledge of the events surrounding Sweezer's death. Initially, defendant claimed that Sweezer was his father and he knew nothing about the incident. During his third statement, however, defendant asserted that two people by the name of "Snake" and Victor Williams (also known as Victor Hamler) killed his father in his presence. Subsequently, the police learned of defendant's true identity and accused him of lying about what really happened to Sweezer. Finally, in defendant's seventh and eighth statements to the police he confessed to participating in a robbery of his uncle's house. Defendant asserted that a struggle ensued between his uncle, Snake and Victor, during which he

struck his uncle on the side of the head with a piece of firewood. Based on this information, defendant was charged with murder for the death of his uncle.

On appeal, defendant initially argues that the trial court clearly erred in refusing to suppress evidence of his statements to the police which he claims were the result of an unconstitutional arrest. According to the defendant, his detention by the police for questioning was unconstitutional because the police lacked probable cause to arrest him. Since the statements were made as a direct result of his illegal detention, defendant asserts they must be suppressed.

When a defendant is detained or taken into custody by the police acting without a warrant, the detention is illegal unless the police have probable cause to arrest that defendant. *People v Hamoud,* 112 Mich App 348, 351; 315 NW2d 866 (1981), lv den 414 Mich 959 (1982). Probable cause to arrest exists when the facts and circumstances within the officers' knowledge are sufficient to a prudent person, or one of reasonable caution, to believe that the suspect has committed or is committing a felony. *People v Mitchell,* 138 Mich App 163, 167; 360 NW2d 158 (1984). Where there is no probable cause to arrest, but the police take a defendant into custody for investigatory purposes, any evidence obtained as a result of that unlawful detention or any statement made while unlawfully detained must be suppressed. *People v Irby,* 129 Mich App 306, 314; 342 NW2d 303 (1983). This Court reviews a trial court's decision on a motion to suppress evidence to determine if it is clearly erroneous. *Id.*

In this case, the determination of whether the police had probable cause to detain the defendant for custodial questioning is a close question. The

trial court in this case determined that the actions of the police were reasonable. However, after reviewing the record, we agree with the defendant that probable cause to arrest did not exist, and therefore his detention was unlawful and evidence of his subsequent statements to the police should have been suppressed.

At the time the police detained the defendant for questioning, they were in the process of investigating a possible homicide. The police had discovered a partially decomposed body at 714 Johnson Street. However, at that point they were unsure of the identity of the body or the cause of death. At about the same time, two other officers encountered the defendant when they went to the Spartan Motel to respond to a complaint by the manager that a car had been illegally parked on the motel's lot for several days. The officers stopped the car the defendant was driving as it was leaving the lot and asked to see the defendant's driver's license. Defendant indicated that he did not have a driver's license but did produce the car's registration which indicated the car was owned by Lee Vond Sweezer who resided at 714 Johnson Street in Lansing. Since the address on the registration was the same as the homicide scene, the officers called their superiors for instructions and were told to bring the defendant in for questioning. At the suppression hearing, however, the officers admitted that they would not have detained the defendant but for the instructions from their superiors to bring him in for questioning.

Thus, the record clearly reveals that when defendant was taken into custody he had committed no crime of which the officers were aware and was not a suspect in any crime. Rather, defendant was taken into custody for investigatory purposes only. However, when the police detain a person for

investigation of a crime, they are in fact admitting that there is a lack of probable cause that the individual committed the crime. See *People v Martin,* 94 Mich App 649, 653; 290 NW2d 48 (1980). The prosecutor asserts that defendant was properly arrested because the police found a knife in his possession. This argument is unpersuasive, however, since the police did not discover the knife or the other weapon until after the defendant was taken into custody. In our opinion, based on the information available to the officers at the time the defendant was taken into custody, probable cause to detain the defendant simply did not exist. Accordingly, the defendant's detention was illegal and the trial court clearly erred in refusing to suppress evidence of the defendant's statements to the police. Therefore, defendant's conviction must be reversed and a new trial ordered.

Although we have determined that a new trial is warranted in this case based on the first issue, we will briefly consider the defendant's other allegations of error in an effort to prevent them from reoccurring in the event of a new trial.

We initially note that the trial court erred in admitting evidence of electrophoretic analysis of dried bloodstained evidence discovered at the murder scene. In *People v Young (After Remand),* 425 Mich App 470; 391 NW2d 270 (1986), our Supreme Court held that serological electrophoresis of evidentiary dried bloodstains has not achieved general scientific acceptance for reliability among impartial disinterested experts in the scientific community and is therefore inadmissible in a criminal prosecution. Thus, at any retrial this evidence cannot be admitted. In passing, we further note that the error in admitting the evidence was compounded by the fact that the trial court refused to allow the defendant to challenge the

reliability of the evidence before the jury, so as to attempt to influence the jury's decision as to how much weight should be given to the scientific evidence. While it is up to the judge, not the jury, to determine if a scientific test is admissible, the trial court should not prevent a defendant from attempting to persuade the jury that little weight should be given to the scientific evidence despite the fact that it is admissible. In certain cases, such a limitation may violate a defendant's right to confrontation guaranteed by the Sixth Amendment to the United States Constitution.

Next, we reject defendant's contention that the prosecutor improperly bolstered the credibility of a proposed expert witness by eliciting the fact that the witness had been qualified as an expert in other cases. The determination of whether a witness is an expert is within the discretion of the trial court, and will not be reversed absent an abuse of discretion. *People v Whitfield,* 425 Mich 116, 122; 388 NW2d 206 (1986). In our opinion, a trial court may properly consider other trial experience in determining whether a witness should be allowed to testify as an expert.

Defendant also argues that the trial court erred by allowing opinion testimony by a crime scene investigator that marks on the stairwell wall could have been made by someone falling and hitting the wall. Expert testimony is admissible provided it assists the trier of fact in understanding the evidence or the factual issues, and the expert witness has sufficient qualifications to make it appear that his opinion or inference will probably aid the jury in its search for truth. *Whitfield, supra,* p 122. The decision to admit expert testimony will not be reversed absent an abuse of discretion. Here, we do not believe that the lower court erred in admitting the expert testimony

about the marks in the stairwell walls. The expert witness had extensive training in crime scene investigations and was very knowledgeable about the different types of trace evidence. Further, the expert testimony was actually consistent with the defendant's own assertion that there had been a three-person fight which had extended down the stairs. Therefore, we find the testimony was properly admitted.

The trial court also admitted, over defense counsel's objection, a prior consistent statement made to the police by prosecution witness Victor Hamler. Defendant asserts that such admission amounted to an improper bolstering of Hamler's credibility and should not have been admitted. We agree.

As a general rule, neither party in a criminal trial is permitted to bolster a witness' testimony by seeking the admission of a prior consistent statement made by that witness. *People v Hallaway,* 389 Mich 265, 276; 205 NW2d 451 (1973) (Justice BRENNAN concurring). While there are exceptions to this rule, such as to rebut a charge of recent fabrication, the exceptions only apply if the earlier consistent statement was given at a time prior to the existence of any fact which would motivate bias, interest, or corruption on the part of the witness. *People v Washington,* 100 Mich App 628, 632; 300 NW2d 347 (1980). In this case, to the extent that Hamler's prior out-of-court statement was consistent with his in-court testimony, it should not have been admitted. The prosecutor argues that Hamler's testimony was admissible to rebut defendant's suggestion that Hamler had made up a story in return for the plea bargain offered to him. This argument must fail, however, because Hamler's statement was given at a time when he had a strong motive to accuse

someone else of the murder. He made his statement before he was offered a plea bargain and at a time when he could have been charged with murder. Therefore, the statement was clearly inadmissible and should not be admitted in any new trial.

Defendant further argues that he should have been granted a mistrial because evidence of certain test results done on a syringe seized from Victor Hamler were not made known to him before being offered by the prosecutor as evidence at trial. Obviously, since the existence of the report is now known, this error is unlikely to reoccur at the defendant's new trial. Further, we do not believe that the failure to produce the report prior to trial is grounds for a mistrial in this case. At trial, the prosecutor stated that she had not known of the report's existence until the detective handed the report to her at trial. Also, the report actually related to Victor Hamler and it was not known until trial that the report was needed. Prior to trial, the prosecutor properly complied with the defendant's request to supply all reports relative to defendant's case. Therefore, the trial court properly denied defendant's motion for a mistrial.

Defendant also claims that he was denied due process when he was ordered, over defense counsel's objection, to proceed in front of the jury dressed in casual street clothes. The trial court in this case, after reviewing the defendant's attire, found that the clothing was not so negative or distracting as to require its intervention. We find no abuse of discretion in that ruling.

A defendant is entitled to be brought before the court in proper attire. See *People v Shaw,* 381 Mich 467, 474; 164 NW2d 7 (1969). He is therefore entitled to wear civilian clothing rather than prison clothes. *Id.* However, simply because a defendant is dressed in casual attire does not violate

due process. Only if a defendant's clothing can be said to impair the presumption of innocence will there be a denial of due process. In this case, defendant's clothing, while casual, was not such that it was unfair to have him wear it before the jury. Thus, there was no due process violation.

Further, defendant asserts that the case against him should have been dismissed because his preliminary examination was not completed for over two months after his arraignment. Pursuant to MCL 766.4; MSA 28.922, the preliminary examination must be scheduled within twelve days after a person is arraigned on criminal charges. However, a magistrate may adjourn the preliminary examination upon a showing of "good cause." MCL 766.7; MSA 28.925. In this case, defendant's preliminary examination was started within twelve days of his arraignment but was adjourned several times by the examining magistrate. Defendant argues that under the applicable statutes his preliminary examination, once started, was required to have been completed within twelve days and that only the accused may be granted an adjournment for good cause. We disagree.

By statute, the preliminary examination must be scheduled within twelve days of a defendant's arraignment. However, that does not preclude a postponement after that point which may exceed twelve days. *People v Frank Johnson,* 146 Mich App 429, 438; 381 NW2d 740 (1985), lv den 425 Mich 855 (1986). In fact, a postponement for good cause in itself may require more than a twelve-day postponement. *Id.* Nothing in MCL 766.7; MSA 28.925 mandates that once a preliminary examination has been adjourned for good cause it must be rescheduled within twelve days. Further, Michigan courts have never read MCL 766.7; MSA 28.925 to mean, as defendant suggests, that only the accused

may be granted an adjournment for good cause. *People v Buckner,* 144 Mich App 691, 694-695; 375 NW2d 794 (1985).

In this case, the trial court determined that good cause was shown for all the adjournments of defendant's preliminary examination. We agree. The first two adjournments occurred because defense counsel had previous appointments which he was required to attend. The preliminary examination was also adjourned sua sponte by the magistrate in part because the prosecutor's wife was ill. No specific date was set at that time for the next session. When the preliminary examination was rescheduled, another adjournment was required because the examining magistrate became ill. Based on these facts, we conclude that good cause existed for the various adjournments of defendant's preliminary examination.

Finally, defendant claims that his right to a trial before an impartial jury was violated where both parties were permitted to exercise multiple peremptory challenges before an excused juror was replaced. MCR 2.511 contemplates the seating and examination of a panel of potential jurors equal in size to the jury that will hear the case. As each juror is challenged, either peremptorily or for cause, another juror should be seated before further challenges are exercised. See *People v Miller,* 411 Mich 321, 325-326; 307 NW2d 335 (1981). This Court has held that it is improper for a court to allow more than one peremptory challenge to be exercised at the same time. *People v Lawless,* 136 Mich App 628; 357 NW2d 724 (1984), lv den 422 Mich 881 (1985). However, since the defendant in this case did not object to the method of jury selection, reversal is not required. *Id.* Certainly, at any retrial, the trial court is expected to follow the

court rules on jury selection and the method employed in this trial should not be repeated.

In conclusion, since we have determined that the trial court erred in failing to suppress evidence of statements made by the defendant as a result of an illegal arrest, we find it necessary to reverse the defendant's conviction and remand this case for a new trial.

Reversed.