# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

UNPUBLISHED
August 27, 2015

v

BRUCE HARLAND BUTLER,

       Defendant-Appellant.

No. 319548
Oakland Circuit Court
LC No. 2011-237958-FC

Before: TALBOT, C.J., and CAVANAGH and METER, JJ.

PER CURIAM.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony, MCL 750.227b. The court sentenced defendant to life imprisonment without parole for the murder conviction and to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

Defendant's convictions arose from the October 6, 2010, shooting death of Michael Khmoro, a liquor store owner in Southfield, Michigan. Khmoro was shot and killed during the afternoon, as he was taking the trash from his store to an outside dumpster. Several months after the shooting, defendant's brother-in-law, Andrew Roberts, brought a gun to the Southfield Police Department. Roberts testified that defendant called him on the day of the shooting and asked to meet. According to Roberts, when they met the next day, defendant gave Roberts a gun that he had inherited from his father and said he wanted to get rid of it. When Roberts asked defendant whether anyone had been killed with the gun, defendant became emotional and confessed to killing Khmoro, but stated that his intent was to kill Khmoro's brother, apparently over a dispute involving a lottery ticket. Video surveillance equipment recorded that the shooter drove a black Buick Envoy, the same type of vehicle that defendant's wife drove. Roberts urged defendant to tell his wife and the police about the shooting. Defendant never did so, and Roberts eventually turned the weapon over to the police. A firearms expert determined that the weapon had fired the bullets that were removed from Khmoro's body.

## I. IDENTIFICATION EVIDENCE

At trial, the victim's brother and a co-owner of the liquor store, Mark Khmoro, testified that he and defendant got into an argument about five or six months before the shooting, when defendant accused Mark Khmoro of stealing a winning lottery ticket. After defendant was arrested, Mark Khmoro identified defendant in a photographic lineup. Defendant argues on

-1-

appeal that the trial court erred in failing to suppress this identification evidence. Defendant contends that the photographic lineup was improper because he was in custody and it was conducted without the presence of counsel.

We review a trial court's factual findings rendered when ruling on a motion to suppress for clear error. *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014). When the trial court's suppression ruling involves an interpretation of law or the application of constitutional standards to uncontested facts, appellate review is de novo. *Id*. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013).

Both the federal and state constitutional right to counsel, US Const, Am VI, and Const 1963, art 1, § 20, attach only to corporeal identifications that occur at or after the initiation of adversarial judicial criminal proceedings, *People v Hickman*, 470 Mich 602, 607-609; 684 NW2d 267 (2004). Adversary judicial criminal proceedings occur by way of formal charge, preliminary hearing, indictment, information, or arraignment because such proceedings signify the commencement of the criminal prosecution to which the Sixth Amendment guarantees are applicable. *Id*. at 607. Because the photographic lineup was conducted before defendant was arraigned, counsel was not required.[1]

An identification premised on a photographic lineup generally should not occur when the accused is in custody. *People v Anderson*, 389 Mich 155, 186-187; 205 NW2d 461 (1973), overruled in part on other grounds in *Hickman*, 470 Mich at 611; *People v Cain*, 299 Mich App 27, 47; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013). However, circumstances may justify the use of photographs when:

1. It is not possible to arrange a proper lineup.

2. There are insufficient number of persons available with defendant's physical characteristics.

3. The nature of the case requires *immediate* identification.

4. The witnesses are at a place far distant from the location of the in-custody accused.

---

[1] In *Hickman*, 470 Mich at 605, the Court overruled *People v Anderson*, 389 Mich 155; 205 NW2d 461 (1973), to the extent that it held that the right to counsel extends to all pretrial identifications, including those occurring before the initiation of adversarial proceedings. Although defendant contends that *Hickman* was wrongly decided and that *Anderson* should be followed, his argument must be directed to the Michigan Supreme Court. A majority decision of the Michigan Supreme Court is binding on lower courts. *People v Beasley*, 239 Mich App 548, 559; 609 NW2d 581 (2000).

5.  The subject refuses to participate in a lineup and by his actions would seek to destroy the value of the identification.  [*Anderson*, 389 Mich at 186 n 22 (emphasis in original).]

Contrary to defendant's assertion, the trial court did not find that the "only reason" for the photographic lineup was the request of Mark Khmoro to appear at defendant's arraignment.  The photographic lineup was conducted after 6:00 p.m. on a Friday evening and defendant's arraignment was scheduled for the next morning.  The detective testified that it was critical that Mark Khmoro's identification occur before the arraignment because the case had received substantial media attention, which created a risk that media coverage would taint any identification that took place after the arraignment, regardless of whether Mark Khmoro attended.  The detective further testified that he investigated the possibility of conducting a live lineup, but could not find a sufficient number of subjects similar to defendant's age (close to 60) and physical characteristics.  The trial court viewed the potential subjects for a live lineup and agreed that they were "farther afield" than the subjects used in the photographic lineup.  The detective admitted that he did not check other county jails or police stations for comparable subjects, but indicated that doing so was not feasible given the impending arraignment and that "under the circumstance[s] this [i.e., the photographic lineup] [was] the only way to do it."  Because the circumstances established a need for an immediate identification and there were insufficient persons available with defendant's physical characteristics to arrange for a live lineup, the police did not err in conducting a photographic lineup despite the fact that defendant was in custody.  Accordingly, the trial court did not err in denying defendant's motion to suppress the identification evidence.[2]

## II.  EXCLUSION OF TESTIMONY

Next, defendant argues that the trial court erred in barring the testimony of Steven Howard, a firearms expert.  The record discloses that the trial court precluded Howard from testifying because of defendant's repeated failure to comply with the prosecutor's discovery requests for a copy of any report generated by a Howard or a summary of Howard's proposed testimony in accordance with MCR 6.201(A)(3).

A trial court has discretion to fashion an appropriate remedy for a violation of the court rules governing discovery.  MCR 6.201(J).  The trial court's decision regarding the appropriate remedy for a discovery violation is reviewed for an abuse of discretion.  *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997).

MCR 6.201 governs discovery in a criminal case.  *People v Phillips*, 468 Mich 583, 587-589; 663 NW2d 463 (2003).  The court rules are interpreted in accordance with the rules of statutory construction, and where the language of a court rule is unambiguous, it is enforced as

---

[2] Defendant does not specifically argue that the photographic lineup was unduly suggestive, and our review of the photographic array establishes that there is no basis for doing do.  There is no basis for concluding that the photographic array gave rise to a substantial likelihood of misidentification.  *Cain*, 299 Mich App at 48.

written without further construction or interpretation. *Id*. at 589. The use of the term "may" is permissive, and the use of the term "shall" denotes mandatory, nondiscretionary action. *People v Brown*, 249 Mich App 382, 386; 642 NW2d 382 (2002).

MCR 6.201 provides, in relevant part:

**(A) Mandatory Disclosure**. In addition to disclosures required by provisions of law other than MCL 767.94a, a party upon request must provide all other parties:

(1) the names and addresses of all lay and expert witnesses whom the party may call at trial; in the alternative, a party may provide the name of the witness and make the witness available to the other party for interview; the witness list may be amended without leave of the court no later than 28 days before trial;

(2) any written or recorded statement, including electronically recorded statements, pertaining to the case by a lay witness whom the party may call at trial, except that a defendant is not obliged to provide the defendant's own statement;

(3) the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion;

* * *

**(J) Violation.** If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion.

"When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). This requires an inquiry into the causes of tardy, or total, noncompliance, and the objecting party's demonstration of actual prejudice. *Davie (After Remand)*, 225 Mich App at 598.

Initially, we note that the trial court did not violate *Phillips*, 468 Mich at 590-591, by ordering Howard to create a report. Rather, the trial court only ordered defendant to produce any report that Howard prepared; indeed, when defense counsel indicated that Howard had not and

would not be preparing a report, the trial court directed defendant to provide a written summary of Howard's proposed testimony.

Regardless of whether an expert prepares a report, MCR 6.201(A)(3) states that "a party upon request must provide all other parties" with "the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion[.]" Thus, even though Howard did not prepare a report, the plain language of this rule required defendant to provide, upon request, a written description of the substance of Howard's testimony. Defendant asserts that he satisfied this rule by sending a letter to the prosecutor that provided the following summary of Howard's anticipated testimony:

> Based upon Mr. Howard's review of discovery provided to the defense by the Oakland County Prosecutor's Office, along with his academic, work experience and qualifications, we believe that his testimony will assist the jury in understanding scientific, specialized and technical knowledge relevant to this criminal case.

> Based upon our discussions with Mr. Howard, we believe that the following is an accurate summary of testimony under Michigan Rule of Evidence 702, 703, and 705 during the defense's case in chief at trial.

> (1) The witness will describe the design, production, manufacturing and operation of firearms. The tooling and machining behind gun manufacturing will be explained. This includes dates of manufacturing and firearm models/types.

> (2) The witness will describe the design, production, manufacturing and operation of firearm ammunition. The materials used in manufacturing ammunition will also be explained. This includes the dates of manufacturing and ammunition models/types.

> (3) The witness will testify to matters relating to ammunition components, trajectory and ballistics.

> (4) The witness will testify to shooting reconstruction, ammunition identification and bullet, cartridge, and cartridge-bullet aging analysis.

> (5) The witness will testify to the identification of bullets and bullet fragmentation.

We agree with the trial court that this summary was inadequate to satisfy the requirements of MCR 6.201(A)(3). The "summary" referenced the general subjects of firearms, ammunition, and firearms testing, but provided no indication of the substance of any proposed testimony related to those subjects and did not offer any opinions by Howard regarding the general matters identified. As indicated, the court rule requires that a written description of an expert's proposed testimony include the "expert's opinion, and the underlying basis of that opinion." Defense counsel's letter did not meet the requirements of the court rule.

-5-

The prosecutor filed multiple requests for a report or written description of Howard's proposed testimony, and the trial court afforded defendant multiple opportunities to respond to the prosecutor's requests. Defendant repeatedly failed to respond by the allowed deadlines, and ultimately filed a response that did not meet the requirements of MCR 6.201(A)(3). Defendant's letter response generally referenced the subject of firearms, but did not offer any insight into the gist of Howard's opinions or proposed testimony on the subject. Under these circumstances, the trial court did not abuse its discretion by excluding Howard's testimony.

Furthermore, the trial court's ruling did not violate defendant's constitutional right to present a defense. Although "[a] criminal defendant has a state and federal constitutional right to present a defense," *People v Kurr*, 253 Mich App 317, 326; 654 NW2d 651 (2002), "an accused's right to present evidence in his defense is not absolute," *People v Unger,* 278 Mich App 210, 250; 749 NW2d 272 (2008). "It is well settled that the right to assert a defense may permissibly be limited by 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *People v Toma*, 462 Mich 281, 294; 613 NW2d 694 (2000), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). In this case, the trial court only barred defendant from calling Howard as a witness after defendant repeatedly failed to comply with established rules for disclosing Howard's proposed testimony. The trial court's ruling did not violate defendant's constitutional right to present a defense.

Defendant argues that Howard should have been permitted to view the testimony of the prosecutor's firearms expert at trial and allowed to offer rebuttal testimony to "negate" the testimony of the prosecutor's firearms expert. "Rebuttal evidence is broadly defined as that given by one party to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *People v De Lano*, 318 Mich 557, 570; 28 NW2d 909 (1947) (citation and quotation marks omitted). Rebuttal evidence is limited to refuting relevant and material evidence. *People v Bennett*, 393 Mich 445, 449; 224 NW2d 840 (1975). "The test for error regarding rebuttal evidence is whether it is justified by the evidence it is offered to rebut." *People v Leo*, 188 Mich App 417, 422; 470 NW2d 423 (1991).

Although defendant contends that Howard should have been allowed to offer rebuttal testimony, he failed to make an appropriate offer of proof identifying the testimony he sought to rebut or explaining what testimony Howard intended to offer in rebuttal. When a trial court excludes evidence, it is incumbent on the party seeking admission to make an offer of proof, and error may not be predicated on the exclusion of evidence unless a substantial right of the party is affected. MRE 103(a)(2); *People v Witherspoon*, 257 Mich App 329, 331; 670 NW2d 434 (2003). Defendant bears "the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal [is] predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000).

Defendant's failure to make an offer of proof regarding any rebuttal purpose of Howard's testimony precludes us from concluding that defendant's substantial rights were affected. See *People v Hampton*, 237 Mich App 143, 154; 603 NW2d 270 (1999).

Defendant also raises a claim of ineffective assistance of counsel in connection with defense counsel's handling of this matter. Because defendant did not raise the issue of

ineffective assistance of counsel in a motion for a new trial or request for a *Ginther*[3] hearing, our review of this issue is limited to errors apparent on the record. *People v Lopez,* 305 Mich App 686, 693; 854 NW2d 205 (2014). "Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "To prove that defendant received ineffective assistance of counsel, he must show (1) that counsel's performance was deficient in that it fell below an objective standard of professional reasonableness and (2) that there is a reasonable probability that the outcome of the trial would have been different but for counsel's performance." *People v Roscoe*, 303 Mich App 633, 643-644; 846 NW2d 402 (2014) (citations and quotation marks omitted). "There is a presumption that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

Defendant argues that defense counsel was ineffective for not producing an appropriate report or other summary of Howard's proposed testimony once the trial court ruled that such production was necessary in order for Howard to testify. Decisions regarding witnesses to be called and the evidence to be presented are presumptively matters of trial strategy that cannot be second-guessed through hindsight. *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). The burden of establishing the factual predicate for a claim of ineffective assistance is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The record does not disclose the reasons for counsel's vacillating positions regarding his intent to produce a report or other summery of Howard's testimony. Although trial counsel initially expressed a willingness to turn over a report by Howard to the prosecutor, it is possible that an opinion rendered by Howard was unfavorable, thereby limiting the usefulness of Howard's testimony. Consequently, trial counsel arguably sought to limit Howard's testimony to the role of attempting to rebut the prosecutor's expert. Even after the trial court ruled that such a limitation on Howard's testimony nonetheless required compliance with MCR 6.201(A)(3), trial counsel relented to the trial court's exclusion, possibly to avoid the disclosure that Howard's testimony may have buttressed the position of the prosecutor's expert. In light of the existing record, defendant has not overcome the presumption of reasonable trial strategy.

Further, even assuming that defense counsel's conduct could be considered objectively unreasonable, there is no basis for concluding that defendant was prejudiced. Although defendant makes blanket assertions that Howard's testimony would have negated the testimony of the prosecutor's expert, a factual foundation for this claim was never presented in the trial court and has not been presented on appeal. Without any factual indication of the nature of Howard's proposed testimony, there is no basis for concluding that there is a reasonable probability that the outcome of the trial would have been different if Howard had testified. Therefore, defendant has failed to establish entitlement to appellate relief.

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

## III. PRIOR CONSISTENT STATEMENTS

Defendant lastly argues that the prosecutor improperly introduced the prior statements Andrew Roberts made to witnesses Stacy Matthews and Ray Roberts, as prior consistent statements to bolster the testimony of Andrew Roberts. Preserved issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). This is essentially an evidentiary issue framed as prosecutorial misconduct. A prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007); *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). "The prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant." *Id*. at 660-661.

"As a general rule, neither party in a criminal trial is permitted to bolster a witness' testimony by seeking the admission of a prior consistent statement made by that witness." *People v Lewis*, 160 Mich App 20, 29; 408 NW2d 94 (1987). An exception to this rule allows a prior consistent statement to be admitted to rebut a charge of recent fabrication. *Id*. A prior consistent statement by a witness is not hearsay under MRE 801(d)(1)(B), which provides:

> **(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—
>
> (1) *Prior Statement of Witness*. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

A prior consistent statement may be admitted pursuant to MRE 801(d)(1)(B) if four elements are established:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [*People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (citations and quotation marks omitted).]

The motive in the second element must be the same motive in the fourth element. *Id*. at 711.

Andrew Roberts's prior statements to Stacy Matthews and Ray Roberts were consistent with his trial testimony, and Andrew Roberts testified at trial and was subject to cross-examination concerning the statements. Defendant alleged that Andrew Roberts's testimony was fabricated or improperly motivated, either to shift suspicion for the shooting away from himself and onto defendant, or to obtain a reward for information regarding Michael Khmoro's killer. We disagree with defendant's contention that the motive to falsify or fabricate arose at the time Khmoro was shot. A key inquiry is whether the prior consistent statements were made before the contact with law enforcement and, if so, the statements arguably preceded the motive to

fabricate. See *People v Fisher*, 220 Mich App 133, 154-156; 559 NW2d 318 (1996), overruled in part on other grounds in *People v Houthoofd*, 487 Mich 568, 583; 790 Mich 315 (2010). Andrew Roberts made the statement to Matthews within 30 days of the shooting, but waited 10 months before turning the gun over to the police. Clearly, this statement was made before any possible motive to fabricate.[4] There was no evidence that Andrew Roberts was suspected of any involvement in the shooting or any possible reward-seeking before he went to the police. Andrew Roberts made the statement to Ray Roberts at an unspecified time before defendant's arrest. Although the timing of the statement to Ray Roberts is unclear, any possible error in the admission of this testimony was harmless given that it was cumulative to Matthews's testimony. See, generally, *People v Dixon*, 161 Mich App 388, 395; 411 NW2d 760 (1987); see also MCL 769.26.[5] We find no basis for reversal.

Affirmed.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

---

[4] Roberts testified that he did not even know about a possible reward until he spoke with the police after turning in the gun. He further stated that he did not want or receive a reward.

[5] We disagree with defendant's implication that this possible error in the admission of evidence was constitutional in nature. However, even if it were, we would nonetheless find it to be harmless.