*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N F SCOTT, Minor.

UNPUBLISHED
October 12, 2023

No. 365520
Calhoun Circuit Court
Family Division
LC No. 2014-003451-NA

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her minor child, NFS.[1]  We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In July 2022, the Department of Health and Human Services (DHHS or petitioner) filed a petition alleging that respondent had recently given birth to NFS and that both respondent and NFS had tested positive for cocaine, opiates, and methadone.  The petition further alleged that respondent admitted to taking prescription opiates that she had purchased illegally and for which she had no prescription.  The petition noted that NFS had experienced drug withdrawal symptoms after birth, requiring medical intervention.  The petition also noted that respondent had her parental rights to another child, TC, terminated in 2011 due to her failure to comply with and benefit from court-ordered services to address her substance abuse and mental health issues, as well as domestic violence and unstable housing.  Further, respondent gave birth to another child (AP) in 2014, who also tested positive for cocaine at birth and required withdrawal treatment.[2]  The petition also noted that respondent was currently on probation for a substance abuse offense.  The petition sought termination of respondent's parental rights at the initial dispositional hearing.

---

[1] NFS's legal father was a respondent in the proceedings below, but his parental rights were not terminated and he is not a party to this appeal.

[2] Respondent's parental rights to AP were not terminated; the trial court noted at the termination hearing that AP's father had custody of her and another of respondent's children.

The trial court authorized the petition and NFS was placed in a non-relative foster home. An amended petition filed in September 2022 noted that respondent had tested positive for fentanyl in July 2022 and had tested positive for fentanyl and methamphetamine three times in August 2022; all of these drug screens were taken after NFS's birth.

An adjudication bench trial was held on November 29, 2022 and December 12, 2022. At the trial, a Children's Protective Services (CPS) worker, Kayla Hughes, testified that she had spoken to respondent on the day of NFS's birth, after respondent and NFS tested positive for cocaine and fentanyl. Hughes testified that respondent admitted to getting a prescription opiate pill from "one of her drug dealers and it may have been laced with fentanyl." A CPS investigator, Joseph Rounds, Jr., testified similarly. Hughes noted that respondent was being provided with psychological counseling and random drug screens through her probation. The trial court took judicial notice that respondent had entered a no-contest plea to possession of methamphetamine in April 2021 and had been placed on probation. The terms of her probation required respondent to complete a residential substance-abuse treatment program and after-care treatment at Sacred Heart Rehabilitation Center. Hughes testified that respondent was discharged from her residential treatment program at Sacred Heart without completion in October 2022 after she "behaved in a manner that was assaultive, abusive, threatening or intimidating" toward a therapist.

Hughes further testified that respondent's parental rights to TC were involuntarily terminated, and that her two other children were placed with their father, who was not NFS's father. Both children had tested positive for controlled substances at birth, one in 2014 and one in 2016.

NFS's foster-care worker, Kelsey Calvert, testified regarding NFS's medical treatment after her birth. She testified that NFS remained hospitalized for eleven days and required significant treatment for opiate withdrawal, including a morphine drip and a feeding tube. Calvert testified that respondent told her she had resumed outpatient methadone treatment at Victory Clinic in July 2022 after being released from the hospital following NFS's birth. Calvert also testified that respondent had tested positive for fentanyl in August 2022, and that respondent's initial psychological evaluation had been rescheduled "a couple times" but was currently scheduled for December 2022.

Respondent presented the testimony of Jonathan Bachman, a substance-abuse therapist and clinical supervisor at Victory Clinic. When respondent's counsel asked Bachman questions about a typical patient's experience with methadone treatment and examples of successful recovery, petitioner objected on the ground that Bachman had not been qualified as an expert witness. Respondent offered Bachman as an expert witness in substance abuse therapy. The trial court conducted voir dire, and Bachman testified that he had a master's degree in Counseling Psychology, was a licensed professional counselor, and had "a certificate for advanced alcohol/drug counselor." At the time of the hearing, Bachman had been employed with Victory Clinic "for about five and a half years doing substance abuse therapy," and he was also employed as a part-time individual therapist at Family Psychological Services. Before working at Victory Clinic, Bachman interned at "another counseling facility for one year." Bachman testified that he had a certain number of continuing education hours that he must complete each year to maintain his license as a counselor. He became "fully licensed" in professional counseling in 2020, and he had a "limited license since 2017." Bachman had not previously testified as an expert witness.

The trial court sustained petitioner's objection, stating that Bachman was permitted to testify about his treatment of respondent but not to testify as expert in the field of substance abuse therapy generally. Bachman then testified that he had previously treated respondent for opioid use at Victory Clinic in 2017 or 2018, and had begun a new round of outpatient opioid-use treatment with respondent in January 2022. Respondent had tested positive for cocaine and fentanyl during her pregnancy, and had tested positive for cocaine, opiates, and fentanyl at least eight times between January 2022 and October 2022. Bachman further testified that he met with respondent twice per month and that respondent was engaged and active in her treatment; however, he also testified that he believed she would benefit from inpatient substance abuse treatment. Bachman believed that respondent had "a very good chance at no longer using illegal drugs," and that she had a good chance of a successful recovery in 2017 or 2018.

The trial court assumed jurisdiction over NFS on December 12, 2022 and issued an adjudication order reflecting that jurisdiction. The trial court then proceeded to the initial dispositional hearing, which was continued on December 14, 2022 and concluded on January 23, 2023. Respondent attended by videoconferencing software due to having been incarcerated for a probation violation. Calvert testified that respondent had provided three negative drug screens in October and November 2022, but had tested positive for fentanyl on December 7, 2022. Respondent was incarcerated on December 9, 2022 and would not receive drug screens while incarcerated. Calvert testified as follows regarding the services provided to respondent:

> For [respondent], she was also already participating at Victory Clinic, she felt that that—those services were benefitting her. We talked about her going to [Narcotics Anonymous] groups, she obtained a peer recovery coach through Recovery Services Unlimited. [Respondent] was also on probation at the time, so we—me and probation were working together so we weren't doubling up on her services and [respondent] was attending psychological consultants here in Battle Creek. When she went to rehab, and came back out, she was told that she would have to recomplete an intake at psychological consultants, so she was advised by her probation officer to just go to Summit Pointe. She went to Summit Pointe—or she went to First Step to do—to the initial first step of the intake process and they advised her that she was not in need of services. At that point I decided I was gonna put outreach counseling in to address her individual counseling as well as their couples counseling.

Calvert clarified that Summit Pointe had determined that respondent's mental health needs were "not intensive enough" for their services, but that Calvert had continued to seek counseling for respondent. Respondent completed a psychological evaluation in December 2022; the evaluator's report noted significant addiction and substance abuse issues.

Calvert testified regarding respondent's previous CPS cases, noting that respondent had been offered substance abuse and mental health services during those cases. Calvert opined that respondent had not shown any benefit from services or made any changes in the conditions that had led to NFS's removal. Calvert testified that respondent would be incarcerated until April 2023 and that Calvert was attempting to connect respondent with whatever limited services might be available in jail.

Calvert testified that respondent-mother had attended two one-hour supervised parenting visits per week prior to her incarceration, and that she had not missed any visits other than during her time in inpatient treatment. Respondent attended NFS's doctor's appointments. Respondent had not been able to provide proof of thirty days of negative drug screens in order to increase her parenting time to four hours per week.

Calvert testified that NFS was placed in a preadoptive foster home. NFS was bonded to her foster mother and her son, who was nine or ten years old at the time of the hearing. Calvert opined that termination of respondent's parental rights was in NFS's best interests to allow for her adoption.

The trial court held that statutory grounds for termination had been proven by clear and convincing evidence, noting respondent's extensive history of substance abuse and failure to benefit from substance abuse services as well as her prior termination:

> The Court took judicial notice, as I stated, of the previous termination of [respondent's right to TC] and considering the circumstances, I really don't see any difference from the 2010 case and her ability to parent and her capacity that I do today. It's been a significant, lengthy period that she has these problems, not only is she not able to parent today, it does not appear that she will be able to parent in the future and under subsection (i), parental rights to one or more of the child's siblings have been terminated, they have, that was due to serious and chronic neglect as testified to in this case for the substance abuse and the mental health, and the parent failed to rectify the conditions that led to the prior termination. So, for mother, both (i) and (j) are met by clear and convincing evidence.

The trial court then concluded that termination of respondent's parental rights was in NFS's best interests, noting that respondent had used heroin as recently as late November 2022, and that "this is a long-term issue and due to the prior terminations, even termination and losing her other children, didn't stop this and there's a significant difference between her case and the father's case in that she's had years and years and years to fix this problem, with services from the [DHHS], with services from the Court, with formal substance abuse services that were offered, and she's failed to do so."

The trial court issued an order terminating respondent's parental rights to NFS. This appeal followed.

## II. REFUSAL TO QUALIFY BACHMAN AS AN EXPERT WITNESS

Respondent argues that the trial court abused its discretion by not qualifying Bachman as an expert witness. We disagree. "[T]his Court reviews a trial court's rulings concerning the qualifications of proposed expert witnesses to testify for an abuse of discretion." *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes. *Id*. "A close evidentiary ruling ordinarily cannot be an abuse of discretion." *Barr v Farm Bureau Gen Ins Co*, 292 Mich App 456, 458; 806 NW2d 531 (2011). "However, if our inquiry requires interpretation

of the Michigan Rules of Evidence, an issue of law is presented, which this Court reviews de novo." *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007).

"MRE 702 establishes prerequisites for the admission of expert witness testimony." *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"The court may admit evidence only once it ensures, pursuant to MRE 702, that expert testimony meets that rule's standard of reliability." *People v Lane*, 308 Mich App 38, 52; 862 NW2d 446 (2014) (quotation marks and citation omitted).

In this case, Bachman testified that he had a master's degree in counseling psychology, was a licensed professional counselor, and had "a certificate for advanced alcohol/drug counselor." At the time of the hearing, Bachman had been employed with Victory Clinic "for about five and a half years doing substance abuse therapy," and he was also employed as a part-time individual therapist at Family Psychological Services. Before working at Victory Clinic, Bachman interned at "another counseling facility for one year." Bachman explained that when helping clients reduce their substance abuse, he uses "cognitive behavioral therapy or [] motivational interviewing." Bachman further explained that he became "fully licensed" in professional counseling in 2020, and that he had possessed a "limited license since 2017." Bachman had never testified as an expert witness before.

The trial court properly considered Bachman's qualifications before finding that he was not qualified to testify as an expert under MRE 702. A license may be evidence of expertise, but it is neither necessary nor sufficient to qualify as an expert witness. *Mulholland v DEC Int'l Corp*, 432 Mich 395, 403-404; 443 NW2d 340 (1989). Therefore, the fact that Bachman held a professional license as a counselor did not automatically qualify him as an expert witness. See *id*. Additionally, "a trial court may properly consider other trial experience in determining whether a witness should be allowed to testify as an expert." *People v Lewis*, 160 Mich App 20, 28; 408 NW2d 94 (1987). Therefore, the trial court properly considered the fact that Bachman had never testified as an expert witness before. See *id*. Bachman was relatively new to his field and his education and licensure was primarily in the area of psychological counseling in general, not substance abuse treatment in particular. He had never testified as an expert, had no writings published in scientific or professional journals, had never taught classes, and did not testify to holding membership in any professional associations or similar organizations dedicated to substance abuse therapy. On balance, the trial court's decision not to qualify Bachman as an expert witness in substance abuse therapy fell within the range of principled outcomes. *Woodard*, 476 Mich at 557.

Further, even if Bachman had been permitted to testify as an expert witness, it is unlikely that the outcome of the case would have been different. Respondent argues that Bachman's "specialized knowledge in substance abuse therapy could have provided the trial court with evidence that many have overcome substance-abuse issues and lived a productive life thereafter, allowing the court to better understand that [respondent] could have parented the child." However, even if the trial court had heard those success-story examples, it would not have changed the fact that respondent had displayed an inability to maintain sobriety for many years.

The trial court noted that respondent had her parental rights to another child terminated in 2011. All four of respondent's children, including NFS, were born addicted to controlled substances; these births occurred over an eleven-year span. The trial court was given numerous examples of respondent's failure to benefit from various forms of substance abuse treatment; Bachman himself testified that respondent had attempted treatment with him in 2017 or 2018, but that treatment had obviously failed to keep respondent from using drugs. Respondent even repeatedly tested positive for fentanyl, opiates, and cocaine after the birth and removal of NFS in July 2022 and her incarceration in December 2022, despite the threat of losing her child and of reincarceration for violating her probation. It is doubtful that testimony concerning the "typical" course of substance abuse treatment or examples of successful recovery would have counteracted the overwhelming evidence that respondent, specifically, had repeatedly failed to benefit from such treatment. Therefore, even if the trial court erred by not qualifying Bachman as an expert, the error would not be a ground for reversal because it was not outcome-determinative. See *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).

## III. TERMINATION AT INITIAL DISPOSITIONAL HEARING

Respondent also argues that the trial court erred by not articulating aggravated circumstances to support termination of respondent's parental rights at the initial dispositional hearing. We disagree.

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Furthermore, "once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Id*. We review the trial court's termination decision for clear error. "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted). We give "deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

MCR 3.977(E) governs the termination of parental rights at the initial dispositional hearing, and states:

> The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if

-6-

(1) the original, or amended, petition contains a request for termination;

(2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;

(3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:

(a) are true, and

(b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m);

(4) termination of parental rights is in the child's best interests.

In this case, DHHS sought termination of respondent's parental rights at the initial dispositional hearing under MCL 712A.19a, which provides in relevant part:

(2) The court shall conduct a permanency planning hearing within 30 days after there is a judicial determination that reasonable efforts to reunite the child and family are not required. Reasonable efforts to reunify the child and family must be made in all cases except if any of the following apply:

(a) There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.

* * *

(c) The parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights.

Therefore, reasonable efforts at reunification are "not required when a parent has his or her parental rights involuntarily terminated to a sibling of the child at issue and the parent has failed to rectify the conditions that led to that earlier termination of parental rights." *In re Sanborn*, 337 Mich App 252, 260; 976 NW2d 44 (2021).

After the adjudication hearing, the trial court noted that respondent's parental rights to another child had been terminated and that respondent failed to rectify the substance-abuse issues that led to that previous termination. Moreover, at the termination hearing, the trial court reiterated that the circumstances that led to the termination of respondent's parental rights in her previous case were substance-abuse and mental-health issues, and found that respondent had failed to rectify those issues.

The trial court found that the statutory grounds for termination found in MCL 712A.19b(3)(i) and MCL 712A.19b(3)(j) were met by clear and convincing evidence and that termination of respondent's parental rights was in NFS's best interests. Specifically, the trial court noted:

As to the [respondent] in this matter, there is no doubt in this Court's mind that there's a reasonable likelihood based on the conduct or capacity of the parent that the child be homed—the child would be harmed if returned to the home of the parent. The [respondent] has significant substance abuse history, she has significant criminality that is continued because of her substance abuse history and the Court both observed personally her mental health through her outbursts, as well as looking at her case. In reviewing her psychological evaluation, it is clear that, again, she needs significant services, her prognosis is considered poor. Dr. Haugen indicated that her problems are long term in nature, char—characterologically based and involve all issues of addiction, both individually and in her relationship and continue despite significant consequences as well as prior intervention. Her ability to commit herself to therapy process and make definite changes should be developed upfront. She has had inpatient treatment, she's had a significant amount of services and despite that she appears from Calhoun County Jail, continuing with criminality and substance abuse charges.

In looking at her history, she has [two other minor children and] . . . if it was not for the father being in a position to parent those children, there's really no doubt that her rights would not be intact to those children. The Court took judicial notice, as I stated, of the previous termination of [respondent's other child] and considering the circumstances, I really don't see any difference from the 2010 case and her ability to parent and her capacity that I do today. It's been a significant, lengthy period that she has these problems, not only is she not able to parent today, it does not appear that she will be able to parent in the future and under subsection (i), parental rights to one or more of the child's siblings have been terminated, they have, that was due to serious and chronic neglect as testified to in this case for the substance abuse and the mental health, and the parent failed to rectify the conditions that led to the prior termination. So, for mother, both (i) and (j) are met by clear and convincing evidence.

\* \* \*

As I stated, not only did the Court observe her issues, herself, but they're clearly outlined in the psychological evaluation that was provided to the Court and there appears to be no changes. She identified heroin as her drug of—or choice, her evaluation in this matter was—according to this in December of—or the report was December of 2022, and it indicates that she used one week prior to the evaluation. So, again, short of being incarcerated, there's no indication—and again I apologize, I gave the report date not the evaluation was actually December 6th, so one week prior to December 6th she was still using heroin. And this is a long-term issue and

due to the prior terminations, even termination and losing her other children, didn't stop this . . . she's had years and years and years to fix this problem, with services from the [DHHS], with services from the Court, with formal substance abuse services that were offered, and she's failed to do so.

The Court's statements clearly indicate that it found that reasonable efforts were not required because respondent's parental rights to a sibling of NFS were involuntarily terminated, and respondent had failed to rectify the conditions that led to that earlier termination of parental rights—substance-abuse and mental-health issues. See MCL 712A.19a(2)(c); *Sanborn*, 337 Mich App at 260. Contrary to respondent's argument, the trial court made clear and detailed findings supporting termination at the initial dispositional hearing under MCL 712A.19a(2)(c). Further, MCL 712A.19b(3)(i) provides that statutory grounds for termination may be found if "Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights." The trial court made findings concerning the prior termination of respondent's parental rights to NFS's sibling and respondent's failure to rectify the conditions that led to that termination and concluded that this statutory ground for termination had been proven by clear and convincing evidence. The trial court was therefore permitted to order termination at the initial dispositional hearing under MCR 3.977(E).

Contrary to respondent's argument, the trial court did not need to make a finding of aggravated circumstances under MCL 712a(2)(a), in light of its findings that satisfied MCL 712A.19a(2)(c). The trial court did not clearly err by terminating respondent's parental rights at the initial dispositional hearing. *Olive/Metts*, 297 Mich App at 40; *Sanborn*, 337 Mich App at 260.

Affirmed.[3]

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney

---

[3] Respondent does not challenge the trial court's finding that statutory grounds that statutory grounds for termination were established by clear and convincing evidence. See *In re Trejo Minors*, 462 Mich 341, 353-354 (2000). Nevertheless, having reviewed the record, we conclude that the trial court did not clearly err by finding clear and convincing evidence supporting termination under MCL 712A.19b(3)(i) on the basis of respondent's previous termination of parental rights to NFS's sibling and failure to rectify those conditions. Respondent also does not challenge whether the trial court clearly erred by determining that terminating respondent's parental rights was in NFS's best interests; therefore, respondent has also waived any challenge to the trial court's findings in that regard. Nevertheless, having reviewed the record, we conclude that the trial court did not clearly err by determining that a preponderance of the evidence supported that terminating respondent's parental rights was in NFS's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).