# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FELANDO DAMONE HUNTER,

        Defendant-Appellant.

UNPUBLISHED
March 15, 2016

No. 319020
Wayne Circuit Court
LC No. 12-009382-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDON HAROLD CRAWFORD,

        Defendant-Appellant.

No. 319298
Wayne Circuit Court
LC No. 12-009385-02-FC

---

Before: TALBOT, C.J., and WILDER and BECKERING, JJ.

PER CURIAM.

In Docket No. 319020, defendant Felando Damone Hunter appeals as of right his convictions, after a jury trial, of first-degree murder,[1] assault with intent to do great bodily harm less than murder (AWIGBH),[2] armed robbery,[3] first-degree home invasion,[4] and possession of a firearm during the commission of a felony (felony-firearm).[5] In Docket No. 319298, defendant

---

[1] MCL 750.316.

[2] MCL 750.84.

[3] MCL 750.529.

[4] MCL 750.110a(2).

[5] MCL 750.227b.

-1-

Brandon Harold Crawford (Brandon) appeals as of right his convictions, after a jury trial, of armed robbery and first-degree home invasion.[6] In Docket No. 319020, we affirm. In docket No. 319298, we affirm Brandon's convictions, but remand the matter pursuant to *People v Lockridge*.[7]

## I. FACTS

On August 8, 2012, Michael Montgomery (Montgomery) concocted a plan to rob the home of Melissa Villneff (Melissa). Accompanied by six other men, Montgomery traveled to her home that evening. Montgomery lured Patrick Villneff (Patrick) away from the home. Michael Evans (Evans), the driver, stayed behind in his vehicle. The remaining five men, Felando, Brandon, Fredrick Young (Fredrick), Reco Simmons (Reco), and Aquire Simmons (Aquire), approached the home. Felando was armed with an SK assault rifle given to him by Montgomery. Reco and Fredrick were armed with pistols, and Aquire was carrying a baseball bat.

Terrance Villneff (Terrance) was inside the home, playing a video game. He recounted being struck on the side of his face, after which he found Felando pointing the SK rifle at his chest. Felando ordered Terrance to a bedroom. When Terrance did not answer Felando's questions, Felando ordered Aquire to beat Terrance with the bat. Aquire beat Terrance in the head, forcing Terrance to crawl to a closet.

After this assault ended and the men left, Terrance heard several gunshots. Several children who had been playing outside had observed the armed men enter Melissa's home. They went to the house next door, where John Villneff (John), Melissa's father, lived. They told John what they saw, and he immediately called 911. He also stepped outside to his porch. As the men were leaving Melissa's home, they saw John. Reco fired a few shots toward John, followed by Felando, who fired several shots from the assault rifle. John was struck and killed by one of these bullets. All but Montgomery, who walked back to the home with Patrick after the shooting, fled in the vehicle driven by Evans.

Felando and Brandon were tried jointly, but before separate juries. Evans and Montgomery testified against them pursuant to plea agreements. Felando and Brandon were convicted as described above.[8]

---

[6] Felando and Brandon were tried jointly, but with separate juries. Their appeals have been consolidated. *People v Hunter*, unpublished order of the Court of Appeals, entered March 18, 2015 (Docket No. 319020).

[7] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

[8] Reco, Aquire, and Fredrick were tried together in a separate trial. Each was convicted of various counts, and each has appealed their convictions to this Court. Their appeals are addressed in a separate opinion.

## II. DOCKET NO. 319020

## A. PROSECUTORIAL MISCONDUCT

In Docket No. 319020, Felando first argues that the prosecutor committed misconduct through the conduct of police officers, who he argues coerced several witnesses into testifying against him. We disagree. Because Felando failed to raise this claim in the trial court, our review is for plain error affecting substantial rights.[9] To warrant reversal, Felando must demonstrate that an error occurred, that the error was plain, and that the error affected the outcome of the lower court proceedings.[10] Even if he establishes these three elements, we must exercise our discretion when deciding whether to reverse. Reversal is only warranted if the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."[11]

"Both our Supreme Court and this Court have strongly condemned prosecutorial intimidation of witnesses."[12] "Threats from law enforcement officers may be attributed to the prosecution."[13] And "[a]lthough the issue of prosecution intimidation usually arises in the context of alleged intimidation of defense witnesses, this Court has condemned as well intimidation by the prosecution of its own witnesses."[14] Our Courts generally consider issues pertaining to witness intimidation under the framework of prosecutorial misconduct.[15] Ultimately, the question is whether, after examining the "statements and actions in context, the defendant was denied a fair and impartial trial."[16]

Felando first argues that Demerious Cunningham (Demerious) was coerced by police into incriminating Felando. Demerious testified that he spoke with police on August 9, 2012. He initially lied to police "[b]ecause [he] didn't want to be involved, and [he] was scared that something would happen to [his] family."[17] However, he later told police the same version of events that he testified to at trial. When asked what changed his mind, Demerious testified that

---

[9] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[10] *Id*.

[11] *Id*. (quotation marks, brackets, and citation omitted).

[12] *People v Stacy*, 193 Mich App 19, 25; 484 NW2d 675 (1992).

[13] *Id*.

[14] *People v Clark*, 172 Mich App 407, 409; 432 NW2d 726 (1988).

[15] See *People v Hill*, 257 Mich App 126, 134-135; 667 NW2d 78 (2003).

[16] *Id*. at 135.

[17] These fears do not appear unfounded. Demerious explained that after he testified at a preliminary examination, his house "got shot up, and [his] car was firebombed."

police threatened to "give [him] four years[]" for lying during a police investigation.[18] Felando asserts that this threat denied him a fair trial. However, there is no prohibition against informing a witness of the potential consequences of making false statements.[19] Nor is there any indication that police coerced Demerious into specifically implicating Felando. Rather, their actions encouraged Demerious to be forthcoming about what transpired. The officer's conduct did not deprive Felando of a fair trial.

Felando similarly asserts LaShanda Cunningham (LaShanda) was pressured into implicating Felando in the crime. But as was the case with Demerious, there is no evidence that police intimidated her into specifically implicating Felando. If anything, police encouraged her to provide complete and honest information. This did not deprive Felando of a fair trial. Moreover, LaShanda's testimony was of little consequence. LaShanda's testimony confirmed what was already known through the testimony of several other witnesses: that Felando and others came to her home the morning of August 9, 2012, and that Felando was in possession of a large, black gun. In light of the substantial evidence admitted against Felando, any error in admitting LaShanda's testimony was not outcome-determinative.

Felando also argues that the trial court coerced Evans into testifying by stating its intention to void his plea agreement if he refused to testify. After Evans indicated that he might refuse to testify, the trial court stated that it would "snatch[] that agreement out of this file, and [Evans] will go to trial . . . ." The trial court then provided Evans almost 30 minutes to speak with his attorneys. After this conversation, Evans agreed to testify. Under the circumstances, we cannot conclude that Evans was coerced by the trial court into testifying. He was given ample opportunity to consult with his attorneys and decide, in light of his plea agreement, whether to testify. Moreover, the jury was well-informed that Evans was testifying pursuant to a plea agreement. The jury was able to consider the effect of this fact on Evans's credibility. Felando was not denied a fair trial.

---

[18] On July 20, 2012, shortly before Demerious spoke with police, our Legislature enacted MCL 750.479c. 2012 PA 104. Pursuant to MCL 750.479c(1)(b), "a person who is informed by a peace officer that he or she is conducting a criminal investigation shall not . . . [k]nowlingly and willfully make any statement to the peace officer that the person knows is false or misleading regarding a material fact in that criminal investigation." If the crime being investigated is murder in the first or second degree, armed robbery, or one of several other serious crimes, a person who violates the statute is "guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both[.]" MCL 750.479c(2)(d). Thus, the assertion that Demerious could face four years in prison for lying during the investigation was a correct statement of the law.

[19] See *People v Layher*, 238 Mich App 573, 587; 607 NW2d 91 (1999) ("[A] prosecutor may inform a witness that false testimony could result in a perjury charge.").

Felando also argues that counsel was ineffective for failing to raise these claims in the trial court. Given that Felando has not demonstrated the existence of any error, his claim of ineffective assistance fails. "Counsel is not ineffective for failing to make a futile objection."[20]

## B. VOUCHING

Felando next argues that the prosecutor impermissibly vouched for the credibility of witnesses by eliciting the fact that Montgomery and Evans testified pursuant to plea agreements. We disagree. Felando raised no such challenge in the trial court. Accordingly, we review the issue for plain error affecting substantial rights.[21]

As Felando acknowledges, a prosecutor does not impermissibly vouch for a witness's credibility by referring to the fact that the witness has agreed to provide truthful testimony pursuant to a plea agreement.[22] However, a prosecutor may impermissibly vouch for the credibility of a witness by using the plea agreement in a way that suggests that the government has special knowledge of the witness's truthfulness.[23] Felando argues that by referencing the fact that Montgomery and Evans entered their pleas before they testified, the prosecutor inferred that she had verified their testimony. Otherwise, Felando contends, the prosecutor would have objected to entry of the pleas. Felando's argument is logically flawed. At the time the witnesses entered their pleas, they had not testified. The prosecutor could not have verified the veracity of testimony that had yet to occur, and thus, had no reason to object to the pleas at the time they were entered. The prosecutor in no way suggested she had any special knowledge that Montgomery and Evans were providing truthful testimony.

Felando argues that counsel was ineffective for failing to raise this issue in the trial court. But because his claim of impermissible vouching is without merit, Felando's claim of ineffective assistance of counsel likewise fails. "Counsel is not ineffective for failing to make a futile objection."[24]

## C. OTHER ACTS EVIDENCE

Relying on MRE 404(b), Felando argues that the trial court should not have allowed Demerious to testify that Felando admitted to committing a carjacking because the evidence was admitted for an improper purpose, that being to demonstrate his propensity to commit crime. Felando has waived this contention of error. Waiver is the intentional relinquishment or abandonment of a known right.[25] Thus, when counsel "clearly expresse[s] satisfaction with the

---

[20] *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

[21] *Carines*, 460 Mich at 763.

[22] *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995), reh den 448 Mich 1225 (1995).

[23] *Id*.

[24] *Thomas*, 260 Mich App at 457.

[25] *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

trial court's decision," a waiver occurs.[26]   When the issue of Felando's prior carjacking was discussed in the trial court, Felando's counsel raised MRE 404(b) as a potential bar to admission of this fact, but only because the prosecutor had not provided notice.[27]   The trial court noted that the prosecutor was not admitting the evidence to prove propensity, to which Felando's counsel responded, "I know, Judge."   Counsel clearly expressed agreement with the fact that the evidence would not be admitted to prove propensity.   This agreement waived any argument that the evidence was not admitted for a proper purpose under MRE 404(b).

But even if the trial court abused its discretion by admitting the evidence, reversal is not warranted.   Multiple witnesses testified to Felando's involvement in the crime, including Terrance, who was beaten during the robbery that preceded John's murder; Montgomery, who orchestrated the crime; and Evans, the getaway driver.   Brandon also testified to Felando's involvement.   Demerious testified that Felando explained his own involvement in the crime in detail.   The fact that Felando had apparently also committed a carjacking was insignificant.   The point was not stressed when the prosecutor questioned Demerious.   Nor was this fact relied on by the prosecutor in her closing argument.   On the whole, the single mention of this carjacking did not affect the outcome of the trial, and thus, reversal is not required.[28]

## III.  DOCKET NO. 319298

### A.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his appeal, Brandon first argues that counsel was ineffective or failing to pursue a duress defense.[29]   We disagree.   A claim of ineffective assistance of counsel "is a mixed question of fact and constitutional law.   A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel."[30]   A trial court's factual findings are reviewed for clear error, while the ultimate

---

[26] *Id.* at 219.

[27] Pursuant to MRE 404(b)(1), evidence of other crimes "is not admissible to prove the character of a person to show action in conformity therewith."   But it may be admissible for other reasons. MRE 404(b)(1).   Pursuant to MRE 404(b)(2), criminal defendants are entitled to reasonable notice in advance of trial of the nature of any such evidence and the prosecutor's rationale for admitting the evidence.

[28] *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011) ("Evidentiary error does not require reversal unless after an examination of the entire cause, it appears more probable than not that the error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence.").   See also MCL 769.26.

[29] Brandon raises other claims of ineffective assistance, based on the failure to raise substantive errors addressed later in this opinion.   We address those claims in conjunction with the substantive issues from which they stem.

[30] *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

constitutional issue is reviewed de novo.[31]  But because no evidentiary hearing has been held regarding this claim, our review is limited to the existing record.[32]

To establish the defense of duress, a defendant must demonstrate four elements:

A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm.[33]

Further, "the threatening conduct or act of compulsion must be present, imminent, and impending . . . ."[34]  Thus, "a threat of future injury is not enough . . . ."[35]

To demonstrate that counsel was ineffective, "a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy."[36]  Brandon fails to do so.  As an initial matter, "duress is not a defense to homicide."[37]  Thus, the defense would have only been available to some of the charges Brandon faced.  Further, Brandon's own testimony, in which he claimed he was unwillingly taken along in Evans's vehicle and did not enter the home, did not disclose any evidence of "present, imminent, and impending" threatening conduct.[38]  Brandon testified that several hours before the robbery, he was threatened with a firearm after Felando asked him for money.  But nothing in his testimony could be construed as an imminent threat of death or serious bodily harm that was made at the time the charged acts took place.  Thus, had counsel pursued the defense, it would almost certainly have failed.

---

[31] *Id.*

[32] *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001).

[33] *People v Lemons*, 454 Mich 234, 247; 562 NW2d 447 (1997).

[34] *Id.* (quotation omitted).

[35] *Id.* (quotation omitted).

[36] *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

[37] *People v Dittis*, 157 Mich App 38, 40; 403 NW2d 94 (1987).  See also *People v Henderson*, 306 Mich App 1, 5-6; 854 NW2d 234 (2014) ("If directly committing a homicide is not subject to a duress defense, assisting a principal in the commission of a homicide cannot be subject to a duress defense either, considering that an aider and abettor to murder is assisting in taking the life of an innocent third person instead of risking or sacrificing his or her own life.").

[38] *Lemons*, 454 Mich at 247.

Rather than pursue a defense of duress, trial counsel appears to have pursued the best defense available. The prosecutor did not contend that Brandon entered the house and participated in the robbery. Instead, she argued that Brandon aided and abetted the others by acting as a lookout while others committed the robbery and murder. Relying on Brandon's testimony, trial counsel argued that Brandon was not an active participant in the crimes, but rather, was merely present when the crimes occurred.[39] Brandon's testimony, if believed, may have supported this defense. But had counsel argued a duress defense, he would have essentially admitted that Brandon participated in the crimes.[40] Counsel was faced with a choice between two mutually exclusive defenses, and chose the defense that was best supported by his client's testimony. We cannot conclude that this strategy, which was apparently at least partially successful, was unreasonable. "That in hindsight a strategy was not *completely* successful does not render it unreasonable and does not render counsel's assistance ineffective."[41]

## B. EVANS'S PRIOR TESTIMONY

Brandon next argues that the trial court erred by allowing the prosecutor to admit Evans's prior testimony, given at his plea proceeding, at Brandon's trial. We disagree. Because no objection was made to this testimony in the trial court, we review the issue for plain error.[42]

At trial, Evans was asked to explain what occurred on August 8, 2012. After explaining the events that brought him and the others to Melissa's home, he testified that Brandon returned to his vehicle before gunshots were heard. He also testified to conflicting versions of exactly what transpired after the crime. The prosecutor then read portions of Evans's testimony at his plea proceeding, asking Evans to confirm that he so testified and that the testimony was truthful. In his plea proceeding, Evans gave a different version of events, one in which Brandon returned

---

[39] "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is not enough to make a person an aider or abettor; nor is mere mental approval, passive acquiescence or consent sufficient." *People v Turner*, 125 Mich App 8, 11, 336 NW2d 217 (1983).

[40] See *Lemons*, 454 Mich at 247. Further, to the extent Brandon inferred that he felt threatened into participating, his credibility was severely undercut by other evidence. Officer Theopolis Williams, who interviewed Brandon, read Brandon's statement to him into evidence. In this statement, Brandon said nothing about having been threatened into participating. Rather, Brandon stated that shortly after he was picked up, he was told that the plan was to rob a house. Montgomery testified that everyone, including Brandon, knew that they would be involved in the robbery in some way, and that all agreed to go forward with the plan. Montgomery also testified that while he and Brandon were being held in jail together, Brandon stated that "when it was time for the court, he was going to say that everybody held him hostage."

[41] *Trakhtenberg*, 493 Mich at 63 (YOUNG, C.J., dissenting). See also *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001) ("That the strategy [counsel] chose ultimately failed does not constitute ineffective assistance of counsel.").

[42] *Carines*, 460 Mich at 763; *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003).

to the Explorer after the gunshots were fired. This version of events also differed with respect to what occurred both before and after the crime. Some limited portions of this second version were consistent with those first stated by Evans.

Despite failing to raise the issue in the trial court, Brandon now argues that this use of Evans's prior testimony was impermissible.[43] Brandon agrees that the portions of Evans's prior statement that were inconsistent with his trial testimony were admissible. But he maintains that the "remaining content was simply inadmissible." He argues that by introducing those portions of Evans's prior statement that were consistent with his testimony, the prosecutor impermissibly bolstered Evans's testimony.

Contrary to Brandon's assertion, the vast majority of Evans's prior statement was inconsistent with his prior testimony. To the extent any portions of the statement were consistent with his trial testimony, Brandon fails to establish error. Generally, "neither party in a criminal trial is permitted to bolster a witness' testimony by seeking the admission of a prior consistent statement made by that witness."[44] However, prior consistent statements may be admitted to rebut a charge of recent fabrication.[45] Pursuant to MRE 801(d)(1)(B), four elements must be established to admit a prior consistent statement:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.[46]

Brandon does not discuss any of these elements, or even attempt to argue that any consistent statements were inadmissible under this rule. Brandon "may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments . . . ."[47] And in any case, the prosecutor's use of Evans's prior statements clearly did not bolster his credibility. Rather, the prosecutor used Evans's prior statements to impeach him after Evans gave what appeared to be a fabricated account of the incident. Brandon has not established error, let alone plain error that affected his substantial rights.

---

[43] Crawford attempts to couch the issue as one of prosecutorial misconduct. In truth, this is an evidentiary issue. A prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

[44] *People v Lewis*, 160 Mich App 20, 29; 408 NW2d 94 (1987).

[45] *Id*.

[46] *People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (quotation omitted).

[47] *People v Bowling*, 299 Mich App 552, 559; 830 NW2d 800 (2013).

Brandon also contends that counsel was ineffective for failing to object to the prosecutor's use of Evans's prior testimony. As Brandon has not established error in this regard, he cannot establish that he received ineffective assistance of counsel. "Counsel is not ineffective for failing to make a futile objection."[48]

## C. SCORING OF OFFENSE VARIABLES

Brandon contends that the trial court erred by assigning 50 points to offense variable (OV) 7 (aggravated physical abuse)[49] and 15 points to OV 10 (exploitation of a vulnerable victim).[50] But as Brandon admits in his brief, had the trial court assessed no points to these variables, his OV level would remain unchanged.[51] "If a scoring error does not alter the guidelines range, resentencing is not required."[52] Accordingly, Brandon is not entitled to relief.

Brandon also asserts that counsel was ineffective for failing to effectively challenge these variables. But because any error would not have altered the sentencing guidelines range, Brandon cannot demonstrate that had counsel contested these variables, a different outcome was reasonably probable. Accordingly, he is not entitled to relief with respect to this claim.[53]

## D. *LOCKRIDGE* ERROR

Brandon argues that his Sixth Amendment right to a jury trial was violated when the trial court, applying the sentencing guidelines as written by our Legislature, relied on its own factual determinations to establish his sentence. We agree. Because this claim was not raised below, we review it for plain error.[54]

In *People v Lockridge*, our Supreme Court held that "[b]ecause Michigan's sentencing guidelines scheme allows judges to find by a preponderance of the evidence facts that are then used to compel an increase in the mandatory minimum punishment a defendant receives, it violates the Sixth Amendment . . . ."[55] "To remedy the constitutional flaw in the guidelines," the

---

[48] *Thomas*, 260 Mich App at 457.

[49] MCL 777.37.

[50] MCL 777.40.

[51] Brandon's total OV score, as determined by the trial court, was 240 points. Removing 65 points reduces this score to 175 points. However, any score of at least 100 points places Brandon in OV level VI. See MCL 777.62.

[52] *People v Rhodes (On Remand)*, 305 Mich App 85, 91; 849 NW2d 417 (2014) (quotation omitted).

[53] *Trakhtenberg*, 493 Mich at 51.

[54] *Carines*, 460 Mich at 763.

[55] *Lockridge*, 498 Mich at 399.

Court held that the guidelines "are advisory only."[56]  The Court provided direction with regard to cases where a defendant, sentenced prior to the date *Lockridge* was decided, had not preserved his or her claim of *Lockridge* error.  As the Court explained:

> First, we consider cases in which (1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced.  In those cases, because the defendant suffered no prejudice from any error, there is no plain error and no further inquiry is required.

> Second, we consider the converse: cases in which facts admitted by a defendant or found by the jury were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced.  In those cases, it is clear from our previous analysis that an unconstitutional constraint actually impaired the defendant's Sixth Amendment right.  The question turns to which of these defendants can show plain error.[57]

The Court explained that those defendants who fell into this second category, and who were not subject to an upward departure, could "establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry."[58]  Following the model of *United States v Crosby*,[59] the Court directed such cases to be remanded to the trial court to follow a multi-step procedure "to determine whether that court would have imposed a materially different sentence but for the constitutional error."[60]  If the answer to this question is yes, the trial court must vacate the existing sentence and resentence the defendant in conformity with *Lockridge*.[61]

Brandon argues that such a remand is necessary in this case because two variables, OVs 7 and 10, were scored only on the basis of judicially-found facts.  Indeed, these variables are not supported by the jury's verdict or by any admissions by Brandon.  The trial court assigned 50 points to OV 7, concluding that "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered

---

[56] *Id.*

[57] *Id.* at 394-395.

[58] *Id.* at 395.

[59] 397 F3d 103 (CA 2, 2005).

[60] *Id.* at 395-397.

[61] *Id.* at 398.

during the offense."[62]  It assigned 15 points to OV 10, concluding that "predatory conduct was involved."  Neither of these factual conclusions may be derived from the jury's convictions of first-degree home invasion and armed robbery.[63]  However, because Brandon's total OV score was 240 points, and any score of at least 100 points would result in the same sentencing guidelines range,[64] these errors alone do not make a threshold showing of the potential for plain error that would require a *Crosby* remand.

However, it is clear that a remand is required.  The trial court assigned 100 points to OV 3, which considers physical injury to a victim, after concluding that as a result of Brandon's commission of the crimes, a victim was killed.[65]  The jury acquitted Brandon of murder, and by finding Brandon guilty of first-degree home invasion and armed robbery, the jury did not necessarily conclude that *any* injury occurred to a victim.[66]  Nor did Brandon make any admission that would support the scoring of this variable.  Removing these points and those assigned to OVs 7 and 10 from Brandon's OV score would alter his sentencing guidelines range.[67]  Brandon's sentence was not an upward departure.  Accordingly, he is entitled to a *Crosby* remand.[68]

On remand, the trial court must first provide Brandon an opportunity to avoid resentencing by promptly notifying the trial court that he does not wish to be resentenced.[69]  If no such notification is received, the trial court should obtain the views of counsel, and then, with or without a hearing, determine whether resentencing is necessary.[70]  If the trial court determines

---

[62] MCL 777.37(1)(a).  Since Brandon was sentenced, our Legislature has revised this statute to read, "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."

[63] See MCL 750.110a(2); MCL 750.529.

[64] See MCL 777.62.

[65] MCL 777.33.

[66] Neither first-degree home invasion nor armed robbery requires proof of physical injury.  MCL 750.110a(2); MCL 750.529.

[67] See MCL 777.62.

[68] Because a remand is necessary in this instance, we decline to address Brandon's argument that the trial court erred by viewing the guidelines as compulsory.  If Brandon is ultimately resentenced, it will be under the now-advisory guidelines scheme, which would render this claim moot.  If the trial court does not resentence Brandon, it will be because the court determines that even when the guidelines are viewed as advisory, the same sentence would result.  In this instance, no prejudice would arise from the error.

[69] *Lockridge*, 498 Mich at 398.

[70] *Id.*

that resentencing is required, it must vacate Brandon's existing sentences and resentence him in accordance with the now-advisory sentencing scheme as explained in *Lockridge*.[71]

Brandon also argues that the length of his sentence is unreasonable "because it does not consider the facts of the crime."[72] He fails, however, to offer any analysis of how this is true. Accordingly, he has abandoned the issue on appeal.[73]

## E. COUNSEL'S CROSS-EXAMINATION OF WITNESSES

Brandon contends that counsel was ineffective for failing to adequately cross-examine several witnesses, and contends that if he had, the jury would have believed his version of events. To prevail on his claim of ineffective assistance of counsel, Brandon "must overcome the strong presumption that counsel's performance was sound trial strategy."[74] Counsel's "decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which [this Court] will not second-guess with the benefit

---

[71] *Id.* at 398-399. In *People v Blevins*, ___Mich App___; ___NW2d___ (Docket No. 315774, February 11, 2016), this Court considered the same type of error, albeit preserved. In *Blevins*, the trial court assigned 15 points to OV 5 on the basis of judicially found facts. *Id.* at ___, slip op at 9-10. This Court remanded the matter to follow the *Crosby* procedure. *Id.* at ___, slip op at 10. However, this Court also indicated its belief that under *Lockridge*, the "sentencing guidelines are to be scored only on the basis of facts necessarily found by the jury or admitted by the defendant." *Id.* at ___, slip op at 10 n 7. To the extent *Blevins* may be read as holding that offense variables may no longer be scored on the basis of judicially found facts, we believe that conclusion conflicts with *Lockridge*. As our Supreme Court explained, the constitutional defect present in Michigan's sentencing guidelines scheme was not solely that a trial court was permitted to make factual determinations, but that the trial court's findings were then used to "*mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *Lockridge*, 498 Mich at 364. Rather than requiring that all factual findings be made by the jury or admitted by the defendant, the Court remedied this defect by "render[ing the guidelines] advisory only." *Id.* at 389-391. The Court further explained that its decision did "nothing to undercut the requirement that the highest number of points possible *must be* assessed for all OVs, whether using judge-found facts or not." *Id.* at 392 n 28. Thus, to prevent any possible confusion on remand, we clarify that the trial court may still rely on facts not found by the jury or admitted by the defendant to score the guidelines. *Id.* See also *People v Stokes*, ___Mich App___, ___; ___NW2d___ (Docket No. 321303, September 8, 2015), slip op at 14. The resulting sentencing range is an advisory range which must be taken into account by the trial court, but from which the court may depart without articulating a substantial and compelling reason for the departure. *Lockridge*, 498 Mich at 391-392; *Stokes*, ___Mich App at ___, slip op at 14-15.

[72] Because the result of the *Crosby* procedure may well be that Brandon's existing sentence remains, we find it proper to address this particular argument.

[73] *Coy*, 258 Mich App at 19-20.

[74] *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004).

-13-

of hindsight."[75] Other than bald assertions that counsel could have done more, Brandon fails to explain how counsel's questioning of witnesses was not sound strategy.

Brandon also fails to explain exactly what questions should have been asked, or what specific information could have been brought out had counsel engaged in additional cross-examination. Further, because Brandon failed to raise his claim in the trial court, this Court's review of the issue is limited to errors apparent in the record.[76] The testimony Brandon believes should have been presented is, by its very nature, not contained in the lower court record, and thus, this Court has not been presented with any evidence that would support Brandon's claim. Moreover, Brandon testified and was thoroughly questioned by counsel regarding his role in the crimes. Thus, the jury was well aware of Brandon's theory of defense. Brandon cannot demonstrate any likelihood of a different result had counsel engaged in additional cross-examination, and accordingly, is not entitled to relief.[77]

## F. JUDICIAL BIAS

Brandon contends that the trial court deprived him of a fair trial by exhibiting bias that affected the jury's verdict. We disagree. Because this issue was not raised below, our review is for plain error.[78]

"A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality."[79] "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party."[80] The comments cited by Brandon were made only after the jury returned its verdict. Logically, these comments could have had no effect on the jury's decision, which had already been made. Accordingly, Brandon has not demonstrated that the trial court's comments deprived him of a fair trial.

## G. EVIDENTIARY ERROR

Finally, Brandon argues that his jury was impermissibly exposed to unfairly prejudicial evidence because it heard damaging testimony from Demerious, which caused his jury to become biased against him. However, Brandon makes no attempt to explain why his jury could

---

[75] *Id*. at 398 (quotation marks and citation omitted).

[76] *Rodgers*, 248 Mich App at 713-714.

[77] *Id*. at 396 (to be entitled to relief, a defendant claiming that counsel was ineffective must demonstrate that "but for counsel's errors, the proceedings would have resulted differently.").

[78] *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011).

[79] *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015).

[80] *Id*. at 170-171.

not hear this evidence. As such, we deem the issue abandoned.[81] In any case, "[a]ll relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded."[82] Demerious's testimony was clearly relevant to Brandon's case, particularly when one considers that he could have been found guilty as having aided and abetted the other men in the crimes.[83] "[E]vidence is unfairly prejudicial when it tends to adversely affect the objecting party's position by injecting extraneous considerations such as jury bias, sympathy, anger, or shock."[84] After reviewing the entirety of Demerious's testimony, there is simply no reason to conclude that it injected any such extraneous influence into the trial. Brandon's argument is without merit.[85]

## IV. CONCLUSION

In Docket No. 319020, we affirm Felando's convictions and sentences. In Docket No. 319298, we affirm Brandon's convictions, but remand for further proceedings as explained in this opinion. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Jane M. Beckering

---

[81] *Bowling*, 299 Mich App at 559-560.

[82] *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005).

[83] See MCL 767.39 ("Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.").

[84] *People v Danto*, 294 Mich App 596, 602; 822 NW2d 600 (2011).

[85] Brandon's statement of the question presented argues that counsel was ineffective for failing to have his jury removed when this testimony was heard. However, he makes no substantive argument regarding this point. In any case, because counsel is not ineffective for failing to raise a meritless objection, Brandon's claim of ineffective assistance fails. *Thomas*, 260 Mich App at 457.