*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

QUINTIN WASHINGTON,

        Defendant-Appellant.

UNPUBLISHED
July 30, 2020

No. 347440
Wayne Circuit Court
LC No. 18-006241-01-FC

Before: BORRELLO, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of assault with intent to commit murder, MCL 750.83; felon in possession of a firearm, MCL 750.224f; felon in possession of ammunition, MCL 750.224f(6); and possession of a firearm during the commission of a felony, second offense, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 20 years to 20 years and one day for the assault conviction, and two to five years for each felon-in-possession conviction, to be served consecutive to a five-year term of imprisonment for the felony-firearm conviction.[1] We affirm defendant's convictions, but remand for resentencing.

Defendant's convictions arise from the non-fatal shooting of Tavion McKnight in a Detroit neighborhood on the afternoon of March 21, 2018. The principal issue at trial was defendant's identity as the shooter. The prosecution presented evidence that, shortly before McKnight was shot, he and defendant had both left a neighborhood convenience store. Defendant walked out of the store with Marvin Esmond, who knew defendant from the neighborhood and happened to see defendant in the store. Surveillance video from a nearby business, which was admitted and played at trial, captured defendant and Esmond walking on Whittier Street, and captured McKnight leaving the store, crossing Whittier, and cutting between two buildings. Esmond testified that as

---

[1] Although the jury convicted defendant of three counts of felony-firearm, the trial court stated at sentencing that it was "collapsing those three into one" and the judgment of sentence states that two of the felony-firearm counts "are vacated."

they were walking, defendant turned and ran across Whittier, and the video showed defendant walking away from Esmond, running across the street and along the length of one of the buildings that McKnight walked between, and then disappearing from view. Approximately one minute after defendant left Esmond, Esmond heard 8 to 10 gunshots; the video captured Esmond looking back, and Edmond testified that he looked back because he heard the gunshots. McKnight then ran back toward the store and collapsed in the middle of Whittier, having been shot once in the buttocks. McKnight testified that the shooter had pointed a gun at him and he ran; no one else was in the area at the time. McKnight was unable to identify defendant as the shooter or provide a description of the shooter, including whether the shooter was male or female, but he testified that the shooter was wearing a black jacket and a black hood. In contrast, Esmond positively identified defendant as the person who ran across the street, but testified that defendant was wearing a blue and yellow Wolverines jacket. At trial, the defense argued that defendant, who was wearing a blue and yellow jacket, was misidentified as the shooter, who McKnight described as wearing all black, and that the surveillance video only showed defendant "running across the street and disappearing behind the building."

## I. GREAT WEIGHT OF THE EVIDENCE

Defendant first argues that he should receive a new trial because the great weight of the evidence failed to show that he was the shooter, particularly because McKnight testified that the shooter was wearing all black, but Esmond, who was with defendant, testified that defendant was wearing a blue and yellow jacket. We disagree.

Defendant did not preserve this issue by raising it in a motion for a new trial. Therefore, our review of this issue is limited to plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

A new trial may be granted if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). In evaluating whether a verdict is against the great weight of the evidence, the question is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998); *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). A verdict may be vacated only when it "does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993) (citation omitted). Absent compelling circumstances, the credibility of witnesses is for the jury to determine. See *Lemmon*, 456 Mich at 642-643.

In this case, sufficient circumstantial evidence supports defendant's identity as the shooter.[2] The testimony and surveillance video evidence demonstrated that as defendant was walking with

---

[2] Defendant does not challenge any of the specific elements of the offenses for which he was convicted, but only challenges his identity as the shooter. Identity is an essential element in a criminal prosecution, *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976), and the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond

Esmond, he abruptly left and ran across the street to a hidden area where McKnight had just walked, along two buildings, and disappeared from view. Esmond testified that 30 to 60 seconds after defendant left to run across the street, Esmond heard multiple gunshots. Esmond then saw McKnight run from the area after having been shot and collapse in the street. McKnight testified that the shooter was the only person in the area at the time he was shot. We cannot conclude that the evidence preponderates so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand.

Defendant's great-weight argument focuses principally on the differences between the descriptions of defendant's clothing and the shooter's clothing. McKnight described the shooter as wearing all black, whereas Esmond testified that defendant was wearing a blue and yellow Wolverines jacket. Conflicting testimony and questions regarding the credibility of witnesses are not sufficient grounds for granting a new trial. *Id.* at 643. Moreover, a jury is free to believe all, none, or part of a witness's testimony. *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). The jury was aware of the conflict in the clothing descriptions of defendant and the shooter. Defense counsel cross-examined both McKnight and Esmond, clearly emphasizing the conflict in what Esmond stated that defendant was wearing and what McKnight claimed the shooter was wearing, and presented credibility arguments to the jury, including that defendant could not be the shooter.

A reviewing court should ordinarily defer to the jury's determination of credibility "unless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities[.]" *Lemmon*, 456 Mich at 644-646 (citation omitted). That is not the case here.

McKnight admitted that he did not get a good look at the shooter's face, and he could not even tell if the shooter was male or female. Considering McKnight's inability to provide other identifying information about the shooter, it was within the province of the jury to discount the accuracy or reliability of his description of the shooter's clothing, and find that defendant's identity as the shooter was established by the evidence that the gunshots were fired approximately a minute after defendant abruptly altered his course to proceed between the same buildings where McKnight had walked, and the testimony that no one else was in the area. Again, it was up to the jury to assess the weight and reliability of the evidence in light of the factors explored by the defense. *Id.* at 643-644. The conflict in the clothing description did not deprive the other circumstantial evidence supporting defendant's identity as the shooter of all probative value. Thus, the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. Accordingly, the jury's verdict is not against the great weight of the evidence.

---

a reasonable doubt. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve it anew. *Id.*

## II.  TRIAL COURT ERRORS

Defendant next argues that the trial court committed various errors that violated his right to due process by infringing on his presumption of innocence and denied him a fair trial.  Again, we disagree.

### A.  FAILURE TO ENSURE APPROPRIATE ATTIRE FOR DEFENDANT

Defendant contends that the trial court erred by failing to ensure that he had appropriate attire for trial, and refusing to allow him to wear a suit provided by defense counsel at trial. Whether a defendant was denied his right to due process involves a constitutional issue that we review de novo.  *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009).  A defendant is entitled to be brought before the court in proper attire, and thus is entitled to wear civilian, rather than prison, clothing.  *People v Lewis*, 160 Mich App 20, 30; 408 NW2d 94 (1987).  Therefore, a trial court must grant a criminal defendant's timely request to wear civilian clothing during trial. *People v Harris*, 201 Mich App 147, 151; 505 NW2d 889 (1993).  "If the trial court observes the defendant's clothing and finds that it is not 'prison garb,' this Court will review only for abuse of discretion."  *Id.*  This Court will defer to a trial court's finding that a defendant's clothing did not prejudicially mark the defendant as a prisoner.  *Id*. at 152.

The record reflects that defendant's clothing was not identifiable as "prison or jail garb." Defendant was wearing the same clothing on the first day of trial that he wore on the second day. On the second day of trial, when defense counsel asked that defendant be allowed to change into a suit that defense counsel had obtained that day, the trial court noted for the record that defendant was "not dressed in jail greens," and defense counsel agreed.  The court then stated: "So he is wearing civilian clothes.  I doubt very much if the jury is going to pay a whole lot of attention as to how he is dressed."

Ordering a defendant to proceed in front of a jury dressed in casual attire does not violate a defendant's right to due process.  *Lewis*, 160 Mich App at 30-31.  "Only if a defendant's clothing can be said to impair the presumption of innocence will there be a denial of due process."  *Id*. at 31.  Because the record indicates that defendant was wearing civilian clothing, and defense counsel agreed with the trial court's observation that the clothing was not identifiable as "prison or jail garb," defendant has not established a due process violation or shown that the trial court abused its discretion by denying defendant's untimely request to change clothing.[3]

---

[3] Contrary to what defendant asserts, the trial court did not deny defendant's request to change from his casual attire into a suit because it was following some arbitrary policy.  It denied defense counsel's untimely request to have other clothing brought to defendant at the court, as opposed to it coming through the jail, contrary to the sheriff's office's security policy.  The trial court explained that if a defendant's clothes "come from outside . . . [the deputies] want those clothes taken over to the jail the night before, so that they can be scanned and examined before a defendant is allowed to wear them in this courtroom[.]"  Therefore, the record does not support defendant's

## B. FAILURE TO STRIKE THE TESTIMONY OF OFFICER WILLIAMS

Next, defendant argues that the trial court erred when it failed to strike the testimony from the arresting police officer, Detroit Police Officer Jalen Williams, that defendant was arrested because he was a "suspect" in the shooting. Because defendant did not object to the officer's testimony, this issue is unpreserved. We review this unpreserved claim for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999).

During the prosecutor's direct examination, Officer Williams testified that when he arrived at the crime scene, McKnight was "laying in the middle of the street" with a gunshot wound to the buttocks. He called for medical assistance and stayed with McKnight until medical personnel arrived. The following exchange then occurred:

> *Q*. Okay. Now I['d] like to fast forward. After that date, did you ever have any more involvement with this particular case?
>
> *A*. Yes.
>
> *Q*. All right. And how so?
>
> *A*. I made the arrest *for the supposed suspect* for the case.
>
> *Q*. Who was the suspect?
>
> *A*. Quintin Washington.
>
> *Q*. Nothing further judge. [Emphasis added.]

Contrary to what defendant argues, the record does not support defendant's claim that the prosecutor called Officer Williams for "sole or primary purpose" of "testifying that [defendant] was suspected" to be the shooter. His testimony was relevant to the circumstances surrounding the crime because he was the first officer to arrive at the scene, and he observed McKnight in the middle of Whittier suffering from a gunshot wound. This was relevant to prove that McKnight was actually assaulted with a firearm, which corroborated McKnight's testimony. MRE 401. The disputed testimony was made while the officer explained his only other involvement in the case, and why he arrested defendant, i.e., because he was a "supposed suspect." The officer's testimony did not infringe on defendant's presumption of innocence because the officer did not testify that defendant was guilty, and gave no opinion about the credibility of any witnesses or any other evidence in the case. Moreover, defendant cannot establish that he was prejudiced by the testimony that he was considered a "supposed suspect," given that it was undisputed that he was charged and was on trial. Furthermore, the trial court instructed the jury more than once that the mere fact that defendant was charged with a crime was not evidence against him, that defendant is presumed to be innocent, that the prosecutor had the burden to demonstrate that defendant was

---

claim that there was no justification for him not being allowed to change clothes, or that the trial court's decision was arbitrary.

guilty beyond a reasonable doubt, and that it was to follow the court's instructions. Juries are presumed to follow their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Thus, even if the challenged testimony was improper, defendant cannot establish that it affected his substantial rights. *Carines*, 460 Mich at 762-763.

## C. FAILURE TO PROVIDE A CURATIVE INSTRUCTION

Defendant also argues that the trial court committed plain error when it did not sua sponte provide an appropriate instruction following, what he maintains was, an improper rebuttal argument by the prosecutor. Because defendant did not object to the prosecutor's remarks, or request a curative instruction, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 762-763.

Defendant relies on the following emphasized remarks from the prosecutor's rebuttal argument, in which he contends that the prosecutor improperly denigrated the defense:

> Now, there was, and I can't remember, there was a squid or an octopus that they are highlighting [on the animal planet]. Now one thing that was interesting is that when the squid or octopus, felt that he was being targeted their defense mechanism to [] squirt off ink into the water. So that he could no longer be targeted.

> Well, you know what, well, Tavion must have been into something, *that's ink*.

> Well Tavion was buying a cigarillo, *that's ink*. Well it was a Michigan jacket, that may have to be maise [sic] and blue, *that's ink*.

> Ladies and gentlemen, *don't be distracted*, by no means.

> There is evidence in this case. Defense counsel wants you to overlook it.

> This is a circumstantial case at its finest, at its finest. And circumstantial evidence is evidence. Circumstantial evidence is so strong that the judge in this case, he's going to read you an instruction. [Emphasis added.]

A prosecutor may not personally attack the credibility of defense counsel, *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003), or suggest that defense counsel is intentionally attempting to mislead the jury. *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). However, a "prosecutor may fairly respond to an issue raised by the defendant[,]" *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008), and need not state her inferences in the blandest possible language. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

Viewed in context, the prosecutor's remarks did not involve a personal attack on defense counsel's credibility or suggest that counsel was intentionally attempting to mislead the jury, but rather fairly responded to defense counsel's arguments. The prosecutor's use of the term "ink" was part of a permissible argument that focused on the plausibility of defense counsel's theory that defendant was not the shooter. The prosecutor gave reasons, grounded in the evidence, for why the jury should reject defense counsel's theory that defendant was not the shooter because of the

conflicting clothing descriptions and because of whatever McKnight may have been involved in. The prosecutor's use of the challenged term "ink" was merely intended to illustrate the prosecutor's point that the jury should not become distracted by defense counsel's arguments and lose focus of the evidence supporting defendant's guilt. Viewed in context, the prosecutor's arguments were not improper.

Moreover, this Court will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *Watson*, 245 Mich App at 586. The trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions. These instructions were sufficient to dispel any possible prejudice and to protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Consequently, this unpreserved claim does not warrant appellate relief.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial because defense counsel was ineffective for various reasons. Again, we disagree.

Because defendant failed to raise this ineffective-assistance claim in a motion for a new trial or request for an evidentiary hearing in the trial court, our review of this issue is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

### A. FAILURE TO ENSURE THAT DEFENDANT HAD APPROPRIATE COURT ATTIRE

Defendant faults defense counsel for failing to ensure that the jury did not see him in inappropriate attire. Defendant observes that it was "commendable" that defense counsel brought a suit for him to wear in court, but faults counsel for failing to earlier inquire if defendant had appropriate clothing for trial, and for failing to request an adjournment to allow an opportunity for the suit to be inspected. While defense counsel could have acted earlier or requested an adjournment, there is no reasonable probability that defendant was prejudiced by these omissions. The trial court noted, and defense counsel agreed, that defendant was dressed in civilian clothing that was not identifiable as jail or prison garb. The court also found that defendant's civilian clothing would not be a distraction for the jury. Accordingly, there is no basis for concluding that defendant's clothing at trial impaired his presumption of innocence, *Lewis*, 160 Mich App at 31, or that there is any reasonable probability that the outcome of defendant's trial would have been different if defendant had worn different clothing. Moreover, given the trial court's indication that

defendant's civilian clothing would not be a distraction for the jury, there is no reasonable probability that the court would have granted an adjournment if counsel had requested one.[4]

## B. FAILURE TO OBJECT TO OFFICER WILLIAMS'S TESTIMONY

Defendant also faults defense counsel for failing to object to Officer Williams's testimony that he "made the arrest for the supposed suspect." Defendant does not identify any legal ground on which defense counsel could have lodged a successful objection. Regardless, to the extent that the challenged testimony could be considered improper, there is no reasonable probability that counsel's failure to object affected the outcome of defendant's trial because, as explained earlier, it would have been apparent to the jury that defendant was considered a suspect because he was charged and on trial, and the trial court's jury instructions protected his right to be presumed innocent. Consequently, defendant cannot establish a claim of ineffective assistance of counsel on this basis.

## C. FAILURE TO ESTABLISH THAT NO GUNS OR AMMUNITION WERE FOUND

Next, defendant argues that defense counsel was ineffective for failing to question Officer Williams in order to establish that no guns or ammunition were found in defendant's possession at the time of his arrest or at his home when it was searched. Decisions regarding what evidence to present are presumed to be matters of trial strategy, and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

Preliminarily, the record is silent as to whether guns or ammunition were found in defendant's possession at the time of his arrest or at his home when it was searched. Although defense counsel did not introduce testimony on this subject, he did seize on the absence of such evidence during his closing argument. Specifically, counsel argued:

> They didn't recover a gun. All they have are [] shell casings. And the officer got on the stand and said yes, I arrested Quintin. But what he didn't say is he had a gun on him at the time. What he didn't say is I found some ammunition on Quintin. Nothing that ties Quintin to the actual shooting other than [the prosecutor's] wish, hope, dream and a prayer that because he ran across the street and around the building he had to do it. But there is no evidence of what happened behind that building. Beyond a reasonable doubt.

Furthermore, on appeal, defendant has not made an offer of proof to support his claim that no firearm or ammunition was recovered during his arrest or the search of his residence. For this reason or other reasons, defense counsel may have made a strategic decision to avoid questioning

---

[4] To warrant an adjournment, a party must demonstrate both good cause and diligence. *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). Factors to be considered include whether the defendant asserted a constitutional right, had a legitimate reason for asserting the right, had been negligent, and had requested previous adjournments. *Id*. (quotation marks and citation omitted). A defendant must also demonstrate prejudice. *Id*. at 18-19.

the officer about the circumstances of defendant's arrest and the search of his residence, and to instead highlight the absence of any inculpatory evidence related to these events during closing argument. In any event, the jury heard the defense theory that defendant was innocent because there was no evidence that any guns or ammunition were found at the time of his arrest or during the search of his home. Consequently, defendant has not established that he was prejudiced by defense counsel's failure in this regard.

## D. FAILURE TO ADEQUATELY QUESTION MCKNIGHT

In his last ineffective-assistance claim, defendant argues that defense counsel failed to sufficiently question McKnight about the shooter's attire. He complains that counsel did not elicit testimony that, during a police interview, McKnight stated: "All I remember is [the shooter] had a black leather jacket with a black hoodie under it and the hoodie was [sic] his face." Defendant contends that McKnight's trial testimony "made it sound as though he believed the shooter was wearing only one hooded black jacket." Decisions regarding what questions to ask are matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

On direct examination, McKnight testified that he did not see the shooter's face and did not get a good look at the shooter because the person was wearing a black hood; he could not tell if the shooter was male or female. He stated that the shooter was wearing a black jacket. On cross-examination, defense counsel elicited from McKnight that he did not recognize defendant at all. Counsel asked if the shooter "had on all black, not blue and yellow, is that correct[,]" and McKnight answered in the affirmative. Counsel then elicited, again, from McKnight that the shooter "was wearing all black." Thus, defense counsel clearly elicited from McKnight that the shooter was wearing all black, not blue and yellow. Further, in closing argument, counsel highlighted the shooter's black attire to argue that defendant was not the shooter:

> And the biggest thing that bothers me and that should raise that doubt in your mind as well. Mr. Esmond said that it was Quintin that was wearing a wolverine jacket; blue and yellow.

> \* \* \*

> And [the shooter] had on—he or she had on all black. Different from a distinctive blue and yellow wolverine jacket.

The record does not support defendant's argument that defense counsel's efforts in this regard were objectively unreasonable or prejudicial.

## IV. CUMULATIVE EFFECT OF SEVERAL ERRORS

Next, defendant argues that the cumulative effect of the alleged errors discussed in this opinion requires reversal. We disagree. We review a claim of cumulative error to determine whether the combination of alleged errors denied the defendant a fair trial. *Dobek*, 274 Mich App at 106. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal," but "[a]bsent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id*.

We have rejected defendant's claims of trial court error, prosecutorial misconduct, and ineffective assistance of counsel. Because defendant has not identified any error, let alone several errors, that undermined the reliability of the verdict, there can be no cumulative effect of errors requiring reversal. *Id*.

## V. SENTENCE

In his last claim, defendant argues that he is entitled to be resentenced because the trial court used an incorrect sentencing guidelines range, and improperly considered his habitual-offender status because he was not given adequate notice of the habitual-offender charge.

## A. GUIDELINES SENTENCE RANGE

Plaintiff concedes, and we agree, that defendant is entitled to be resentenced because the trial court did not use the correct guidelines range. If a sentence is within the appropriate guidelines sentence range, a defendant is still entitled to resentencing if there is a scoring error altering the guidelines range or if the trial court relied on inaccurate information. *People v Francisco*, 474 Mich 82, 88-90, 92; 711 NW2d 44 (2006).

The trial court scored the sentencing guidelines for defendant's conviction of assault with intent to commit murder, which is a class A offense, MCL 777.16d, governed by the sentencing grid at MCL 777.62. According to defendant's Sentencing Information Report, he originally received a total offense variable (OV) score of 60 points, placing him in OV Level IV, which combined with his 45 prior record variable points, placed him in the D-IV cell of the applicable sentencing grid, which resulted in a sentencing guidelines range of 126 to 420 months for a fourth-offense habitual offender. MCL 777.62; MCL 777.21(3)(c). At sentencing, the trial court increased the assigned 10-point score for OV 6 (intent to kill or injure) to 25 points. The prosecutor then indicated that the scoring adjustment placed defendant in OV Level V, for which the minimum sentence range is 135 to 225 months, or 135 to 450 for a fourth-offense habitual offender, which the trial court used to sentence defendant. However, the additional 15 points for OV 6 increased defendant's total OV score from 60 points to 75 points, which did not change his placement in OV Level IV (60-79 points), and thus had no effect on his guidelines range. Thus, as plaintiff concedes, because the trial court erroneously sentenced defendant using the incorrect guidelines range of 135 to 450 months, defendant is entitled to be resentenced.[5] See *Francisco*, 474 Mich at 92.

---

[5] Within this issue, defendant also argues that defense counsel was ineffective for not objecting to the trial court's use of an incorrect guidelines range. Because we have determined that defendant is entitled to relief on his substantive claim of sentencing error, his ineffective-assistance claim is now moot and we need not address it. See *People v Jones*, 317 Mich App 416, 431-432; 894 NW2d 723 (2016).

## B. HABITUAL-OFFENDER NOTICE

Because defendant did not challenge the trial court's authority to sentence him as a fourth-offense habitual offender in the trial court, this issue is unpreserved and we review the issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

MCL 769.12 provides that a person who has been previously convicted of three or more felonies shall be subject to an enhanced sentence if convicted of a subsequent felony. To enhance the sentence of a defendant, the prosecutor must file a written notice of intent within 21 days after the defendant's arraignment on the information charging the underlying offense. MCL 769.13(1). The notice must be filed with the court and may "be personally served on the defendant or his [] attorney at the arraignment" or in any manner provided by law or court rule. MCL 769.13(2). The purpose of MCL 769.13 is to ensure that a defendant has notice at an early stage in the proceedings that he could be sentenced as an habitual offender. *People v Morales*, 240 Mich App 571, 582; 618 NW2d 10 (2000). The prosecutor's failure to file a proof of service of the notice of intent to seek an enhanced sentence can be deemed harmless where the "defendant had actual notice of the prosecutor's intent to seek an enhanced sentence and defendant was not prejudiced in his ability to respond to the habitual offender notification." *People v Head*, 323 Mich App 526, 544; 917 NW2d 752 (2018).

In this case, seven days before defendant's arraignment, a grand jury indictment was issued, which indicated that defendant would be subjected to a mandatory 25-year minimum sentence as a fourth-offense habitual offender under MCL 769.12. At the August 9, 2018 arraignment, the following occurred regarding the habitual-offender notice:

> *The prosecutor*: "I did not indict this case, but I did review the indictment as part of preparation for being down here today. I see that the felony firearm, the prior felony firearm from 1984 is being used both to habitualize as a violent hab 25-year mandatory minimum as [we]ll as a felony firearm 2nd offense. I don't believe you can do both of those. So, I'll let the prosecutor that's gonna handle this know and hopefully they can resolve that before our next date."

> *The court*: Okay.

At the October 16, 2018, final conference, the prosecutor explained that, while defendant was a habitual offender, he was not subject to the 25-year mandatory minimum. The following exchange occurred:

> *The prosecutor*: Your Honor, on the original Grand Jury indictment, as the Court has so stated, it shows that habitual fourth offense notice, mandatory twenty-five year sentence.

> I am the, uh, newly appointed A.P.A. for this particular case. Uhm, and I reviewed this matter, and it appears that, uh, the original A.P.A. did not, uhm, correctly compute the, uh, mandatory twenty-five sentence.

> There must be three separate transactions.

And in this case, it was two transactions. As such, Your Honor, I have amended to, uh, Grand Jury indictment, with the change of the habitual offender notice.

*The court*: So, he's a Hab four, but he's not subject to the mandatory twenty five year sentence?

*The prosecutor*: Yes, Your Honor.

*The court*: Correct?

*The prosecutor*: Yes, that's correct.

*The court*: Okay.

Duly noted.

[Defense counsel], you've been advised of that splendid news, I guess, already?

*Defense counsel*: Yes, Judge.

Thus, the lower court record reflects that defendant received actual notice of the prosecutor's intent to seek habitual-offender enhancement, and that the notice was merely later amended to correct an error. Defendant does not dispute the validity of the underlying offenses supporting his status as a fourth-offense habitual offender. MCR 6.112(H) provides, in pertinent part, that "[t]he court before, during, or after trial may permit the prosecutor to amend the information or the notice of intent to seek enhanced sentence unless the proposed amendment would unfairly surprise or prejudice the defendant." Defendant could not have been surprised by the amendment because it did not change his habitual-offender status. Further, defendant was not prejudiced by the amendment because it *reduced* his possible penalty by clarifying that he was no longer subject to a potential mandatory 25-year minimum sentence. Lastly, the amended indictment was personally served on defense counsel. Consequently, the trial court did not plainly err by sentencing defendant as a fourth-offense habitual offender.

Affirmed in part and remanded for resentencing. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Deborah A. Servitto

-12-